IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
|  | x |  |
|  | : | Chapter 11 |
| In re: | : | Case No. 04-45814 (JWV) |
|  | : |  |
| INTERSTATE BAKERIES | : |  |
| CORPORATION, et al., | : | Jointly Administered |
|  | : |  |
| Debtors. | : |  |
|  | x |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**FINDINGS OF FACT AND CONCLUSIONS OF LAW FROM HEARING ON
CONFIRMATION OF AMENDED JOINT PLAN OF REORGANIZATION OF
INTERSTATE BAKERIES CORPORATION AND ITS AFFILIATED DEBTORS AND
DEBTORS-IN-POSSESSION DATED OCTOBER 31, 2008**

Upon the motion (the "Solicitation Procedures Motion") dated October 9, 2008

(Docket no. 11354) of Interstate Bakeries Corporation ("IBC") and eight[1] of its subsidiaries and

affiliates, debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order

approving (I) the form and manner of notice of the Debtors' hearing to approve the Disclosure

Statement (as amended from time to time and including all exhibits and supplements thereto, the

"Disclosure Statement") for the Amended Joint Plan of Reorganization of Interstate Bakeries

Corporation and Its Affiliated Debtors and Debtors-in-Possession Dated October 31, 2008 (as

subsequently amended, supplemented, or otherwise modified, the "Plan"),[2] (II) the Disclosure

Statement, (III) the cure procedures for executory contracts or unexpired leases to be assumed and

---

1    The following subsidiaries' and affiliates' chapter 11 cases are jointly administered with IBC's chapter 11 case:
Armour and Main Redevelopment Corporation ("Armour & Main"); Baker's Inn Quality Baked Goods, LLC; IBC
Sales Corporation ("IBC Sales"); IBC Services, LLC; IBC Trucking, LLC; Interstate Brands Corporation; New
England Bakery Distributors, L.L.C. ("New England Bakery"); and Mrs. Cubbison's Foods, Inc. ("Mrs.
Cubbison's"). All the Debtors other than Armour & Main, Mrs. Cubbison's and New England Bakery are referred
to as the "Main Debtors".

2    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan or the
Solicitation Procedures Order.

reinstated pursuant to the Plan, (IV) the record date, the voting deadline and certain other

procedures, (V) the form and manner of notice of the confirmation hearing and the procedures for

filing objections to the Plan, and (VI) the procedures for soliciting votes on the Plan and the notices

to be distributed with respect thereto, and upon the order entered on October 30, 2008, on the

Solicitation Procedures Motion (Docket no. 11483) (the "Solicitation Procedures Order"), the

Court held a hearing on December 5, 2008 to consider confirmation of the Plan (as such hearing

may have been adjourned or continued, the "Confirmation Hearing").

At the Confirmation Hearing, the Court admitted evidence, including (A) the

Court's review of the Certificates of Publication (defined below), the Affidavits of Mailing

(defined below), and the Voting Report (defined below), (B) the Debtors' Memorandum of Law (i)

in Support of Confirmation of the Amended Joint Plan of Reorganization of Interstate Bakeries

Corporation and Its Affiliated Debtors and Debtors-in-Possession Dated October 31, 2008 and (ii)

in Response to Objections Thereto, filed by the Debtors on December 3, 2008, (C) the (i)

Declaration of J. Randall Vance, Senior Vice President, Chief Financial Officer and Treasurer of

Interstate Bakeries Corporation In Support of Amended Joint Plan of Reorganization of Interstate

Bakeries Corporation and its Affiliated Debtors and Debtors-in-Possession Dated October 31,

2008 (Docket no. 11669) (the "Vance Declaration"); (ii) Declaration of Lloyd A. Sprung In

Support of Amended Joint Plan of Reorganization of Interstate Bakeries Corporation and its

Affiliated Debtors and Debtors-in-Possession Dated October 31, 2008 (Docket no. 11664) (the

"Sprung Declaration"); and (iii) Declaration of Robert A. Campagna, Managing Director With

Alvarez & Marsal North America, LLC and Senior Vice President of Restructuring of Interstate

Bakeries Corporation In Support of Amended Joint Plan of Reorganization of Interstate Bakeries

Corporation and its Affiliated Debtors and Debtors-in-Possession Dated October 31, 2008 (Docket

no. 11663) (the "Campagna Declaration"), each filed by the Debtors in advance of the

Confirmation Hearing, and (D) all of the evidence proffered or adduced at the Confirmation

Hearing, took judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the

Court and/or its duly-appointed agent, including all pleadings and other documents filed, all orders

entered, and all evidence and arguments made, proffered or adduced at, the hearings held before

the Court during the pendency of the Chapter 11 Cases, including (1) the hearing held on October

3, 2008 to consider approval of the Commitment Letter, (2) the hearing held on October 22, 2008

to consider approval of the Investment Agreement, and (3) the hearing held on October 30, 2008 to

consider the adequacy of the Disclosure Statement, and heard argument on confirmation of the

Plan and on objections filed in opposition thereto.  After due deliberation thereon and good and

sufficient cause appearing therefor, the Court hereby makes the following findings of fact and

conclusions of law (the "Findings and Conclusions"):[3]

THE COURT FINDS AND CONCLUDES THAT:

A.     Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and

1334(a)).  The Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core

proceeding under 28 U.S.C. § 157(b)(2), and the Court has exclusive jurisdiction to determine

whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be

confirmed.

B.     Filing Of Plan.  On October 31, 2008, the Debtors filed the Plan and the Disclosure

Statement.  The Plan consists of nine separate plans jointly proposed and filed by each of the

---

3   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of
    fact when appropriate.

Debtors.  Unless stated otherwise, each reference in these Findings and Conclusions to the Plan (in

the singular) is a reference to all such nine separate plans.

C.    Solicitation Procedures Order.  On October 30, 2008, the Court entered the

Solicitation Procedures Order that, among other things, (i) approved the Disclosure Statement as

containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code,

(ii) established procedures for each non-debtor counterparty to an executory contract or unexpired

lease designated for assumption and reinstatement pursuant to the Plan to object to the amount

necessary to cure defaults under such executory contract or unexpired lease, (iii) fixed December 5,

2008 at 9:00 a.m. (Central time) as the date and time for the commencement of the Confirmation

Hearing, (iv) approved the form and method of notice of the Confirmation Hearing (the

"Confirmation Hearing Notice"), (v) fixed December 1, 2008 at 12:00 noon (Central time), as the

deadline for filing and serving objections to confirmation of the Plan as well as Cure Amount

Objections, (vi) established procedures for objecting to the confirmation of the Plan, (vii)

established procedures for temporary allowance of claims for voting purposes, and (viii)

established certain procedures for soliciting and tabulating votes with respect to the Plan.

D.    Affidavits of Mailing.  The (i) Certificate of Service of Karen M. Wagner re:

Solicitation Cure Notices Served On or Before November 4, 2008 (Docket No. 11549); (ii)

Certificate of Service of Angela M. Nguyen re: Documents Served On or Before November 3,

2008 (Docket No. 11551); and (iii) Certificate of Service of Karen M. Wagner re: Document

Served On or Before November 6, 2008 (Creditor Matrix) (Docket No. 11556) were filed with the

Court on November 15, 2008.  In addition, the Amended Certificate of Service of Karen M.

Wagner re: Documents Served November 6, 2008 (Docket No. 11614) was filed with the Court on

November 30, 2008.  The Certificates of Service referred to in this paragraph are collectively

referred to as the "Affidavits of Mailing".

     E.     Transmittal Of Solicitation Package.  On or before November 6, 2008, the Debtors

caused the Confirmation Hearing Notice, the Disclosure Statement, the Plan, the Solicitation

Procedures Order (without exhibits), and an appropriate ballot and return envelope to be mailed to

holders of Claims in Class 8 under the Main Debtors' Plan, holders of Claims in Class 7 under IBC

Sales' Plan, holders of Claims in Class 5 under the Plans of Mrs. Cubbison's, New England Bakery

and Armour & Main, and holders of Claims in Class 4 under the Plans of Mrs. Cubbison's and New

England Bakery (collectively, the "Voting Classes") in accordance with Bankruptcy Rule 3017(d)

and the Solicitation Procedures Order, all as set forth in the Affidavits of Mailing.  In addition, on

or before November 6, 2008, the Debtors caused to be mailed (i) to holders of Claims in Classes 1,

2, 3, 4, 5 and 6 under the Main Debtors' Plan and in Classes 1, 2 and 3 under the Plan of Mrs.

Cubbison's, New England Bakery and Armour & Main, the Notice Of Non-Voting Status With

Respect To Unimpaired Claims, (ii) to holders of Claims or Interests in Classes 9, 10a, 10b, 11 and

12 under the Main Debtors' Plan, the Notice Of Non-Voting Status With Respect To Certain

Impaired Claims and Interests, and (iii) to holders of contingent, unliquidated or disputed Claims

in all of the Chapter 11 Cases, the Notice Of Non-Voting Status With Respect To (1) Contingent,

Unliquidated Or Disputed Claims, (2) Claims Scheduled As Zero Or Unknown In Amount, Or (3)

Claims To Which The Debtors Have Filed An Objection, also as set forth in the Affidavits of

Mailing.  Finally, on or before November 6, 2008, the Debtors caused to be mailed (i) the

Confirmation Hearing Notice, the Plan, the Disclosure Statement and the Solicitation Procedures

Order (without exhibits) to all parties on the Master Service List[4] and all parties on the Bankruptcy

---

4    As defined in the Order Under 11 U.S.C. § 105 Establishing Monthly Omnibus Hearings and Certain Notice, Case
    Administration and Administrative Procedures entered on September 24, 2004 (Docket No. 80).

Rule 2002 List, and (ii) the Confirmation Hearing notice to over 200,000 parties listed on the

Debtors' creditor matrix.

F.   <u>Publication Of Confirmation Hearing Notice</u>.  The Debtors published the

Confirmation Hearing Notice in: (i) The Kansas City Star on November 5, 2008, as evidenced by

the Affidavit of Publication of the Kansas City Star (Docket No. 11552); (ii) The New York Times

on November 5, 2008, as evidenced by the Affidavit of Publication - The New York Times

(Docket No. 11553); (iii) The Wall Street Journal (for national distribution) on November 5, 2008,

as evidenced by the Affidavit of Publication - The Wall Street Journal (Docket No. 11554); and (iv)

USA Today on November 6, 2008, as evidenced by the Affidavit of Publication - USA Today

(Docket No. 11555); (the certificates referenced in clauses (i), (ii), (iii) and (iv), collectively, the

"<u>Certificates of Publication</u>").

G.   <u>Transmittal And Mailing Of Materials; Notice</u>.  Adequate and sufficient notice of

the Disclosure Statement, the Plan, the Confirmation Hearing and the other bar dates, deadlines

and hearings described in the Solicitation Procedures Order was given in compliance with the

Bankruptcy Rules and the Solicitation Procedures Order, and no other or further notice is or shall

be required.

H.   <u>Ballots</u>.  All procedures used to distribute solicitation materials to the applicable

holders of Claims and Interests and to tabulate ballots were fair and conducted in accordance with

the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the local rules of

the Bankruptcy Court for the Western District of Missouri (the "<u>Local Rules</u>"), and all other

applicable rules, laws, and regulations.

I.   <u>Solicitation</u>.  The Debtors and their agents, representatives, attorneys, and advisors

have solicited votes on the Plan in good faith and in compliance with sections 1125 and 1126 of the

Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Solicitation

Procedures Order, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all

other applicable rules, laws, and regulations applicable to such solicitation.

J.       <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  The Debtors and their agents,

representatives, attorneys, and advisors are entitled to the protections afforded by section 1125(e)

of the Bankruptcy Code as well as the exculpation and limitation of liability provisions set forth in

Section 11.7 of the Plan.

K.       <u>Bankruptcy Rule 3018(a) Motion</u>.  Prior to the Confirmation Hearing, one motion

was filed for temporary allowance of claims for voting purposes pursuant to Bankruptcy Rule

3018(a) (the "<u>3018(a) Motion</u>").  The 3018(a) Motion was subsequently withdrawn.

L.       <u>Voting Report</u>.  On December 3, 2008, Kurtzman Carson Consultants LLC filed the

Certification of Karen M. Wagner Regarding Votes Accepting or Rejecting the Amended Joint

Plan of Reorganization of Interstate Bakeries Corporation And Its Affiliated Debtors and

Debtors-In-Possession Dated October 31, 2008 (Docket No. 11655) (the "<u>Voting Report</u>"),

certifying the method and results of the ballot tabulation for each of the Voting Classes under the

Plan.  Based upon the Voting Report, the Court finds that voting by the holders of Claims in the

various classes entitled to vote on the Plan was as follows:

### Voting Report Summary[5]

| All Voting Classes | Amount | | | Number | | |
|---|---|---|---|---|---|---|
| | Accept | Reject | Percent Accepting | Accept | Reject | Percent Accepting |
| **IBC Sales** | | | | | | |
| Class 7 | $456,128.52 | $0 | 100% | 3 | 0 | 100% |
| Class 8 | $451,412,030.13 | $0 | 100% | 29 | 0 | 100% |
| **Main Debtors (other than IBC Sales)** | | | | | | |
| Class 8 | $451,412,030.13 | $0 | 100% | 29 | 0 | 100% |
| **Mrs. Cubbison's** | | | | | | |
| Class 4 | $13,675.27 | $0 | 100% | 3 | 0 | 100% |
| Class 5 | $7,218,726.74 | $0 | 100% | 3 | 0 | 100% |
| **New England Bakery** | | | | | | |
| Class 4 | $3,637.91 | $0 | 100% | 5 | 0 | 100% |
| Class 5 | $7,218,726.74 | $0 | 100% | 3 | 0 | 100% |
| **Armour & Main** | | | | | | |
| Class 5 | $7,218,726.74 | $0 | 100% | 3 | 0 | 100% |

M.     <u>Impaired Classes Voting To Accept The Plan</u>.  As evidenced by the Voting Report, all Voting Classes have accepted the Plan with respect to each of the Debtors in accordance with section 1126 of the Bankruptcy Code.

N.     <u>Acceptance By At Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10))</u>. With respect to the Main Debtors, Class 8 (Prepetition Lender Claims) is impaired in each of the Main Debtors' Chapter 11 Cases, voted to accept the Plan with respect to each of the Main Debtors and contains no "insiders" of the Main Debtors.  Therefore, at least one Impaired Class of Claims, determined without including any acceptance by an insider of any of the Main Debtors, has voted to accept the Plan with respect to each of the Main Debtors.  In addition, with respect to IBC Sales,

---

5     This Voting Report Summary includes the accepting votes of Bank of Nova Scotia, in the amount of $9,482,573.35, and JPMorgan Chase Bank NA, in the amount of $4,578,386.07, in Class 8 under the Main Debtors' Plan, and Del Mar Master Fund Limited, in the amount of $11,632.52, in Class 4 under Mrs. Cubbison's Plan.  These votes were received one day after the Voting Deadline, but are hereby deemed timely.

the holders of Class 7 (Capital Lease Claims) voted to accept the Plan.  With respect to Mrs.

Cubbison's, New England Bakery and Armour & Main, Class 5 (General Unsecured Claims) is

impaired in each case, voted to accept the Plan with respect to each of Mrs. Cubbison's, New

England Bakery and Armour & Main and contains no "insiders" of such Debtors.  Therefore, at

least one Impaired Class of Claims, determined without including any acceptance by an insider of

any of such Debtors, has voted to accept the Plan with respect to each of Mrs. Cubbison's, New

England Bakery and Armour & Main.  Therefore, section 1129(a)(10) is satisfied with respect to

each Debtor.

O.    <u>Zero Distribution Classes</u>.  The Plans provide that Classes 9, 10a, 10b, 11 and 12

with respect to the Main Debtors (collectively, the "<u>Zero Distribution Classes</u>") will not receive or

retain under the Plan any property on account of such Claims or Interests.  The Zero Distribution

Classes are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

P.    <u>Plan Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan

satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with the applicable

provisions of the Bankruptcy Code, including:

(i)    <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  In addition to
Administrative Claims and Priority Tax Claims (which are not required to be classified), Article III
of the Plan designates Classes of Claims and Interests for each of the Debtors.  The Claims and
Interests placed in each Class are substantially similar to other Claims or Interests, as the case may
be, in each such Class.  Valid business, factual and legal reasons exist for separately classifying the
various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly
discriminate between holders of Claims or Interests.  Thus, the Plan satisfies sections 1122 and
1123(a)(1) of the Bankruptcy Code.

(ii)    <u>Specification Of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.  Section
3.2(a) of the Plan specifies the Classes of Claims against and Interests in the Main Debtors that are
Unimpaired.  Section 3.3(a) of the Plan specifies the Classes of Claims against and Interests in
Mrs. Cubbison's, New England Bakery, and Armour & Main that are Unimpaired.  Thus, the Plan
satisfies section 1123(a)(2) of the Bankruptcy Code.

(iii)    <u>Specification Of Treatment Of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.
Sections 3.2(b) and (c) of the Plan specify the Classes of Claims against and Interests in the Main

Debtors that are Impaired. Section 3.3(b) of the Plan specifies the Classes of Claims against Mrs. Cubbison's, New England Bakery, and Armour & Main that are Impaired. Thus, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

(iv)     <u>Same Treatment (11 U.S.C. § 1123(a)(4))</u>. The Plan provides for the same treatment of each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to less favorable treatment with respect to such Claim or Interest. Thus, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

(v)     <u>Implementation Of Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan provides adequate and proper means for implementation of the Plan as described in Articles VI (Means for Implementation of the Plan), VII (Unexpired Leases and Executory Contracts), VIII (Provisions Governing Distributions), and X (Creditors' Trust). Thus, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

(vi)     <u>Prohibition Against Issuance Of Non-Voting Equity Securities And Provisions For Voting Power Of Classes Of Securities (11 U.S.C. § 1123(a)(6))</u>. The Certificate of Incorporation for Reorganized IBC, as set forth in Plan <u>Exhibit L</u>, contains a provision that prohibits the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code. In addition, Section 6.3 of the Plan provides that the charter and bylaws of each of the Reorganized Subsidiary Debtors will prohibit the issuance of non-voting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code, until two (2) years after the Effective Date. Thus, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code.

(vii)     <u>Selection Of Officers, Directors, And The Trustee (11 U.S.C. § 1123(a)(7))</u>. The Debtors have adequately disclosed or otherwise identified the procedures for determining the identities and affiliations of all individuals or entities proposed to serve on or after the Effective Date as officers or directors of the Reorganized Debtors, as the Trustee for the Creditors' Trust, and as members of the Trust Advisory Board. The appointment or employment of such individuals or entities and their proposed compensation and indemnification arrangements are consistent with the interests of Claimholders and with public policy. Thus, section 1123(a)(7) of the Bankruptcy Code is satisfied.

(viii)     <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>. The Plan's provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code, including provisions for (a) distributions to Claimholders, (b) the disposition of executory contracts and unexpired leases, (c) the retention of, and right to enforce, sue on, settle or compromise (or refuse to do any of the foregoing with respect to) certain claims or Causes of Action against third parties, to the extent not waived, released, or transferred to the Creditors' Trust under the Plan, (d) resolution of Disputed Claims, (e) allowance of certain Claims, (f) performance of the Debtors' obligations under the Investment Agreement, (g) indemnification obligations, (h) releases by the Debtors and the Reorganized Debtors of certain parties, (i) releases by holders of Claims and Interests of certain parties, and (j) exculpation of various Persons with respect to actions related to or taken in furtherance of the Chapter 11 Cases.

(ix)     <u>Fed. R. Bankr. P. 3016(a)</u>. The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

Q.     <u>Debtors' Compliance With Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The

Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy

Rules, the Solicitation Procedures Order, and other orders of this Court, thereby satisfying section

1129(a)(2) of the Bankruptcy Code.  The Debtors are proper debtors under section 109 of the

Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

The Debtors have complied with the applicable provisions of the Bankruptcy Code during the

Chapter 11 Cases, including as provided or permitted by orders of the Court.

R.     <u>Plan Proposed In Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Court has examined

the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the formulation of

the Plan, the Plan and all modifications thereto and, as permitted under Bankruptcy Rule

3020(b)(2), the fact that no objection to confirmation has been timely filed to the finding that the

requirements of section 1129(a)(3) have been satisfied.  The Debtors, Equity Investors and the

Prepetition Investors and their respective Affiliates, shareholders, partners, directors, officers,

employees and advisors, among others, and each of their respective professionals, negotiated the

Plan in good faith and at arm's length and participated in the Plan formulation process in good faith.

The Chapter 11 Cases were filed, and the Plan and all modifications thereto were proposed, with

the legitimate and honest purpose of reorganizing and maximizing the value of the Debtors and the

recovery to Claimholders.  Therefore, the Debtors have proposed the Plan in good faith and not by

any means forbidden by law, and section 1129(a)(3) of the Bankruptcy Code is satisfied with

respect to the Plan.

S.     <u>Payments For Services Or Costs And Expenses (11 U.S.C. § 1129(a)(4))</u>.  Any

payment made or to be made by the Debtors for services or for costs and expenses in connection

with the Chapter 11 Cases, including administrative expense and substantial contribution claims

under sections 503 and 507 of the Bankruptcy Code, or in connection with the Plan and incident to

the Chapter 11 Cases, either has been approved by or is subject to the approval of the Court as

reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

     T.    <u>Directors, Officers, And Insiders (11 U.S.C. § 1129(a)(5))</u>.  The initial board of

directors of Reorganized IBC will consist of eight (8) directors.  Craig Jung (or in the event of his

death, incapacity, or resignation, the chief executive officer of IBC) shall serve as a director.

Equity Investors shall designate five (5) directors.  The Prepetition Investors shall designate two (2)

directors reasonably satisfactory to Equity Investors.  In addition, in accordance with Section 6.6(b)

of the Plan, on November 21, 2008, Equity Investors filed the IBC Investors I, LLC's Designation

of Directors Under Section 6.6(b) of the Amended Joint Plan of Reorganization of Interstate

Bakeries Corporation and its Affiliated Debtors and Debtors-in-Possession Dated October 31,

2008 (Docket no. 11573), identifying five (5) of the initial members of the board of directors of

Reorganized IBC and, on November 21, 2008, the Prepetition Investors filed the Designation of

Directors by Silver Point Finance, LLC, Monarch Alternative Capital L.P. and McDonnell

Investment Management, LLC Under Section 6.6(b) of the Amended Joint Plan of Reorganization

of Interstate Bakeries Corporation and Its Affiliated Debtors and Debtors-in-Possession Dated

October 31, 2008 (Docket no. 11576), identifying two (2) of the initial members of the board of

directors of Reorganized IBC.  The existing directors of each Subsidiary Debtor shall remain in

their current capacities as directors of the applicable Reorganized Subsidiary Debtor, subject to the

ordinary rights and powers of the board of directors or equityholders to replace them.  The Debtors

have disclosed that the existing officers or managing members of the Debtors shall remain in their

current capacities as officers of the Reorganized Debtors, subject to the ordinary rights of

replacement.  Therefore, the Debtors have disclosed the initial officers and directors of the

Reorganized Debtors, including the identity of any insider that will be employed or retained by the Reorganized Debtors.  On November 21, 2008, the Debtors filed a Notice of Filing of Plan Exhibit N (Summary Description of Terms of Employment of Certain Key Executives) to the Amended Joint Plan of Reorganization of Interstate Bakeries Corporation and Its Affiliated Debtors and Debtors-in-Possession, Dated October 31, 2008 (Docket no. 11488) and, on November 24, 2008, the Debtors filed a Notice of Filing of Plan Exhibit E (Summary of the Long Term Incentive Plan) (Docket no. 11582) that adequately disclose the compensation to be received by certain members of the Reorganized Debtors' management and other key employees.  The appointment to, or continuance in, such office of each individual, is consistent with the interests of holders of Claims and Interests, and with public policy.  Therefore, section 1129(a)(5) of the Bankruptcy Code is satisfied with respect to the Plan.

U.    No Rate Changes (11 U.S.C. § 1129(a)(6)).  Section 1129(a)(6) of the Bankruptcy Code does not apply because there is no governmental regulatory commission that has jurisdiction over the Debtors' or the Reorganized Debtors' rates.

V.    Best Interests Test (11 U.S.C. § 1129(a)(7)).  The liquidation analysis attached as Appendix B to the Disclosure Statement, the Vance Declaration and the Campagna Declaration and other evidence proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) are based upon reasonable and sound assumptions, (3) provide a reasonable estimate of the liquidation values of the Debtors upon hypothetical conversion to cases under Chapter 7 of the Bankruptcy Code, and (4) establish that each holder of a Claim or Interest in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such

holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on

such date.  Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

      W.     <u>Acceptance By Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  With respect to the Main

Debtors, Classes 1, 2, 3, 4, 5 and 6, and, with respect to Mrs. Cubbison's, New England Bakery and

Armour & Main, Classes 1, 2 and 3 are Unimpaired by the Plan and therefore, under section 1126(f)

of the Bankruptcy Code, such Classes are conclusively presumed to have accepted the Plan.

Further, all Impaired voting Classes in the Chapter 11 Cases of the Debtors have voted to accept

the Plan.  However, the Zero Distribution Classes are deemed to reject the Plan and, therefore,

section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to these Classes.

      X.     <u>Treatment Of Administrative And Priority Tax Claims And Other Priority Claims</u>

<u>(11 U.S.C. § 1129(a)(9))</u>.  The treatment of Administrative Claims and Other Priority Claims

under the Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code,

and the treatment of Priority Tax Claims under the Plan satisfies the requirements of section

1129(a)(9)(C) of the Bankruptcy Code.

      Y.     <u>Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  Each Impaired Class of

Claims entitled to vote on the Plan has voted to accept the Plan and such Classes of Claims do not

contain Claims held by "insiders."  Therefore, section 1129(a)(10) of the Bankruptcy Code is

satisfied with respect to the Plan.

      Z.     <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The Plan does not provide for the liquidation

of all or substantially all of the property of the Debtors.  The financial projections in Appendix C to

the Disclosure Statement, the Vance Declaration, the Sprung Declaration, the Campagna

Declaration, and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive

and credible, (ii) have not been controverted by other credible evidence or sufficiently challenged

in any of the objections to the Plan, and (iii) establish that the Plan is feasible and that confirmation

of the Plan is not likely to be followed by the liquidation of the Reorganized Debtors or the need

for further financial reorganization of the Reorganized Debtors.  Therefore, the Plan satisfies

section 1129(a)(11) of the Bankruptcy Code.

AA.    Payment Of Fees (11 U.S.C. § 1129(a)(12)).  The Debtors have paid or, pursuant to

Sections 1.7 and 2.1 of the Plan, will pay by the Effective Date, fees payable under 28 U.S.C.

§ 1930, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

BB.    Continuation Of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Section 6.7(b) of the

Plan (as modified by the Confirmation Order) provides that, following the Effective Date, the

payment of all retiree benefits (as defined in section 1114 of the Bankruptcy Code) will continue at

the levels and for the duration of the periods the Debtors have obligated themselves to provide

such benefits, thereby satisfying section 1129(a)(13) of the Bankruptcy Code.

CC.    Election Pursuant to 11 U.S.C. § 1111(b).  No secured creditor has elected the

treatment provided by section 1111(b) of the Bankruptcy Code.

DD.    Section 1129(b); Confirmation Of The Plan Over Nonacceptance Of Impaired

Classes.  The Zero Distribution Classes are Impaired Classes of Claims or Interests that are

deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g).  All of the requirements of

section 1129(a) of the Bankruptcy Code, other than section 1129(a)(8) with respect to such Classes,

have been met, and with respect to such Classes, no holders of Claims or Interests junior to the

holders of such Classes will receive or retain any property under the Plan on account of such

Claims or Interests.  Finally, no Class of Claims or Interests senior to any Zero Distribution

Classes is receiving property under the Plan having a value more than the Allowed amount of such

Claim or Interest.  Accordingly, the Plan is fair and equitable and does not discriminate unfairly, as

required by section 1129(b) of the Bankruptcy Code and may be confirmed under Bankruptcy

Code section 1129(b) notwithstanding their rejection or deemed rejection of the Plan.

EE.    <u>Principal Purpose Of Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan

is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of

1933 (15 U.S.C. § 77e).  Accordingly, the Plan satisfies the requirements of section 1129(d) of the

Bankruptcy Code.

FF.    <u>Burden Of Proof</u>.  The Debtors, as proponents of the Plan, have met their burden of

proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of

evidence, which is the applicable evidentiary standard.  The Court also finds that the Debtors have

satisfied the elements of sections 1129(a) and (b) of the Bankruptcy Code under the clear and

convincing standard of proof.

GG.    <u>Valuation</u>.  The valuation analysis set forth in the Disclosure Statement and the

implied total enterprise value, as described in the Disclosure Statement, are reasonable.

HH.    <u>Executory Contracts</u>.  The Debtors have exercised reasonable business judgment in

determining whether to assume or reject their executory contracts (including licenses) and

unexpired leases pursuant to Article VII of the Plan.  Each assumption or rejection of an executory

contract or unexpired lease (including licenses) pursuant to Sections 7.1, 7.2 and 7.3 of the Plan

shall be legal, valid and binding upon the applicable Debtor or Reorganized Debtor and their

assignees or successors and all non-Debtor parties (and their assignees or successors) to such

executory contract or unexpired lease, all to the same extent as if such assumption or rejection had

been effectuated pursuant to an order of the Court entered before the Confirmation Date under

section 365 of the Bankruptcy Code.

II.    <u>Assumption of Contracts and Leases</u>.  A list of each executory contract (including

licenses) and unexpired lease to be assumed under the Plan (other than Union Contracts) is

attached as <u>Exhibit O</u> to the Plan (as such list may be amended, the "<u>Assumed Contracts and</u>

<u>Leases</u>").  The Debtors' assumption of the Assumed Contracts and Leases is a reasonable exercise

of the Debtors' business judgment.  On or before November 4, 2008, the Debtors delivered Cure

Notices to the non-debtor parties to the Assumed Contracts and Leases to the notice addresses

listed on <u>Exhibit O</u> as originally filed, or, if no such notice address is listed, to such other addresses

as reasonably determined by the Debtors.6  With the exception of the parties who objected to the

Cure Amounts or to the assumption of an executory contract or unexpired lease (the "Cure Amount

Objectors"), no timely Cure Amount Objections were received by the Debtors from the

non-Debtor counterparties to the Assumed Contracts and Leases.  The Debtors have Cured, or

provided adequate assurance that the Reorganized Debtors or their successors or assignees will

promptly Cure, defaults (if any) under or relating to each of the Assumed Contracts and Leases, to

the extent required by Section 365(b) of the Bankruptcy Code.  Subject to the exceptions more

specifically described in Section 7.3 of the Plan, the Debtors are assuming each of the Union

Contracts to which the Debtors are a party as the same are modified or to be modified consistent

with the modifications agreed to by the Debtors and the applicable collective bargaining unit and

subsequently ratified by such collective bargaining unit (the "<u>Union CBA Modifications</u>"),[7] a

summary of which was described on the record at the Confirmation Hearing including the Debtors'

agreement to reimburse the reasonable fees and expenses of counsel for the BCTGM in an amount

---

6    Cure Notices and/or notices of Cure Amounts were sent to approximately 7 additional parties whose Assumed
     Contracts and Leases were added to Plan <u>Exhibit O</u> subsequent o November 4, 2008.  These Cure Amounts have
     either been resolved by the Debtors or the debtors have not received a response.

7    On December 4, 2008, the Debtors filed a Notice of List of Union Contracts to be Assumed Pursuant to the
     Amended Joint Plan of Reorganization of Interstate Bakeries Corporation and its Affiliated Debtors and
     Debtors-in-Possession, dated October 31, 2008 (Docket No. 11687).

not to exceed $500,000.  As used herein, the term "Union Contracts" shall include all Union CBA

Modifications as they may pertain to a specific Union Contract.  Union CBA Modifications are

necessary in order to effect all of the concessions and work rule changes necessary to implement

"path to market" and the Business Plan (as defined in the Disclosure Statement).  The Debtors'

assumption of the Modified Union Contracts is a reasonable exercise of the Debtors' business

judgment.

JJ.    <u>Releases And Discharges</u>.  The releases and discharges of Claims and Causes of

Action described in Article XI of the Plan, including the dismissal with prejudice of the Prepetition

Lender Actions and the release of any Claims or Causes of Action preserved pursuant to that

certain Agreed Order Extending the Challenge Deadline, ordered by the Bankruptcy Court on

April 24, 2007 (Docket No. 8848), constitute good faith compromises and settlements of the

matters covered thereby.  Such compromises and settlements are (i) made in exchange for

consideration, (ii) in the best interests of the Debtors' Estates, Claimholders and parties in interest,

(iii) fair, equitable and reasonable, (iv) integral elements of the restructuring and resolution of the

Chapter 11 Cases in accordance with the Plan and (v) supported by the Creditors' Committee.

Each of the discharge, release, injunction, indemnification and exculpation provisions set forth in

the Plan: (a) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d); (b) is

an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy

Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers material

benefit on, and is in the best interests of, the Debtors, their Estates and their creditors; (e) is

important to the overall objectives of the Plan to finally resolve all Claims among or against the

parties-in-interest in the Chapter 11 Cases with respect to the Debtors, their organization,

capitalization, operation and reorganization; and (f) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code.

KK.     <u>Modifications To The Plan</u>.  The modifications to the Plan set forth in the Confirmation Order have been made in a manner consistent with Section 14.2 of the Plan and constitute technical changes that do not materially adversely modify the treatment of any Claims or Interests.  The Debtors have complied with the requisite consent provisions of the Plan in connection with such modifications.  Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

LL.     <u>Plan Conditions To Confirmation</u>.  The conditions to Confirmation set forth in Section 12.1 of the Plan have been satisfied or waived in accordance with the terms of the Plan.

MM.     <u>Plan Conditions To Consummation</u>.  Each of the conditions to the Effective Date, as set forth in Section 12.2 of the Plan, is reasonably likely to be satisfied or waived in accordance with the terms of the Plan.

NN.     <u>Agreements and Other Documents</u>. The Debtors have made adequate and sufficient disclosure of: (i) the adoption of new certificates of incorporation and bylaws for Reorganized IBC (attached as Plan <u>Exhibits L</u> and <u>M</u>, respectively) as well as the commitment to amend the Organizational Documents of the Reorganized Subsidiary Debtors as necessary to satisfy the provisions of the Plan and the Bankruptcy Code; (ii) the distributions to be made pursuant to the Plan; (iii) the issuance, for distribution, in accordance with the terms of the Plan, of the New Common Stock, the New Convertible Secured Notes, and the Warrants, and the entry into the New

Third Lien Term Loan; (iv) the adoption, execution, delivery and implementation of all contracts, leases, instruments, releases and other agreements or documents relating to any of the foregoing; (v) the adoption, execution and implementation of employment and indemnification agreements, and other employee plans and related agreements; (vi) the Investment Agreement and the Exit Facility Documents; and (vii) the other matters provided for under the Plan involving the corporate structure of the Reorganized Debtors.

OO.    New Credit Facilities, New Convertible Secured Notes and New Third Lien Term Loan Credit Facility.  The New Credit Facilities, the New Convertible Secured Notes and the New Third Lien Term Loan Credit Facility are essential elements of the Plan, and entry into the Exit Facility Documents with terms substantially similar to those set forth in the term sheets approved by the Court pursuant to the Commitment Letter Approval Order and the Investment Agreement Order and giving effect to the First Amendment to the Investment Agreement, dated December 1, 2008 and the Amendment to the Term Loan Facility Commitment Papers, dated as of December 4, 2008, are in the best interests of the Debtors, their Estates and their creditors.  The Debtors have exercised reasonable business judgment in determining to enter into the Exit Facility Documents. The Debtors have provided sufficient and adequate notice of the principal terms of the New Credit Facilities, the New Convertible Secured Note Indenture and the New Third Lien Term Loan Credit Facility to their major constituencies, including the Prepetition Agent, the DIP Agent, the Creditors' Committee and those parties-in-interest that have filed a request for notice with the Court.  All documents necessary to implement the Plan, including the Exit Facility Documents, will, upon execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

PP.    <u>Investment Agreement and Exit Facility Documents</u>.  The Investment Agreement

and the Exit Facility Documents are essential elements of the Plan and entry into and

consummation of the Investment Agreement and the Exit Facility Documents are in the best

interests of the Debtors, their estates and their creditors and are approved in all respects, as

reflected in the Court's orders (i) dated October 22, 2008 (with respect to the Investment

Agreement) and (ii) dated October 3, 2008 with respect to the ABL Facility Commitment Papers,

the Commitment Letter and the Term Loan Facility Commitment Papers (with respect to the Exit

Facility Documents).  The investment being made by the Equity Investors pursuant to, and subject

to the terms and conditions of, the Investment Agreement represents reasonably equivalent value

for the consideration the Equity Investors are receiving under the Plan.  Each Equity Investor,

Prepetition Investor and their Affiliates, shareholders, partners, directors, officers, employees and

advisors has acted in good faith in connection with the Chapter 11 Cases and the formulation and

confirmation of the Plan.

QQ.    <u>Releases and Exculpation of Equity Investors and the Prepetition Investors</u>.  The

releases and exculpation of the Equity Investors, the Prepetition Investors, the Term Loan Facility

Lenders and their Affiliates, principals, employees, agents, officers, directors, financial advisors,

attorneys and other professionals, and any of their successors and assigns, as set forth in Sections

11.4, 11.5 and 11.7 of the Plan are fair and equitable, reasonable and in the best interests of the

Debtors and their estates, and are an integral component of the Plan and the restructuring and

resolution of the Chapter 11 Cases.  More specifically, factors that support approval of the releases

and exculpation of the Equity Investors , the Prepetition Investors and the Term Loan Facility

Lenders include: (i) the investment made by the Equity Investors pursuant to, and subject to the

terms and conditions of, the Investment Agreement, and the debt financing to be provided to the

Reorganized Debtors by the Prepetition Investors and the Term Loan Facility Lenders pursuant to

the Term Loan Facility, constitute a material, substantial contribution to the Debtors' estates, (ii)

the Equity Investors', the Prepetition Investors' and the Term Loan Facility Lenders' contributions

are necessary and integral to the success of the Plan because the Equity Investors' investment, and

the debt financing provided by the Prepetition Investors and the Term Loan Facility Lenders

pursuant to the Term Loan Facility, provide a substantial source of funds to the Debtors' estates

and allow distributions to be made to holders of Claims, which could not be made without the

Equity Investors' investment pursuant to, and subject to the terms and conditions of, the

Investment Agreement and the debt financing provided by the Prepetition Investors and the Term

Loan Facility Lenders pursuant to the Term Loan Facility, (iii) the releases and exculpation of the

Equity Investors, the Prepetition Investors and the Term Loan Facility Lenders are an important

part of the Plan because without such releases and exculpation, neither the Equity Investors, the

Prepetition Investors nor the Term Loan Facility Lenders would have agreed to make the

substantial contributions to the Debtors' estates, and (iv) the breadth of the releases and

exculpation set forth in the Plan is necessary to the Plan and bears a reasonable relationship to the

protection of the Debtors' estates.  As set forth in the Voting Report, the Plan was accepted by

holders of Claims entitled to vote thereon.  Accordingly, the releases and exculpation set forth in

the Plan for the benefit of the Equity Investors, the Term Loan Facility Lenders and the Prepetition

Investors and their Affiliates, principals, employees, agents, officers, directors, financial advisors,

attorneys and other professionals, and any of their successors and assigns, are consistent with

sections 105, 1123 and 1129 of the Bankruptcy Code and applicable law and should be, and hereby

are, approved.

RR.    <u>Equity Investors' Investment Intent</u>.  In Section 3.05 of the Investment Agreement, the Equity Investors represent that "[t]he Shares and New Convertible Debt purchased by Investor pursuant to this Agreement, and the Series A Warrants and Series D Warrants issued to Investor pursuant to this Agreement, are being acquired for investment only and not with a view to any public distribution thereof."  Based on these representations, the securities described above will come to rest with the Equity Investors, and the Equity Investors are acquiring these securities with investment intent and not with a view to distribution thereof.

SS.    <u>No Conflict</u>.  The financial accommodations being extended pursuant to the New Credit Facilities, the New Convertible Secured Note Indenture and the New Third Lien Term Loan Credit Facility are being extended in good faith and for legitimate business purposes.  The execution and implementation of the Exit Facility Documents do not conflict with the terms of the Plan or the Confirmation Order.

TT.    <u>Preservation Of Causes Of Action</u>.  It is in the best interests of the Claimholders that the Causes of Action that are not expressly released under the Plan be retained by the Reorganized Debtors pursuant to Section 6.14 of the Plan or transferred to the Creditors' Trust as contemplated by Section 10.2 of the Plan and the Intercreditor Settlement in order to maximize the value of the Estates and the distributions to Claimholders.

UU.    <u>Intercreditor Settlement Order</u>.  Approval of the Intercreditor Settlement Order is an integral component of the Plan.

VV.    <u>Plan Settlements</u>.  The Plan is dependent upon and incorporates the terms of numerous compromises and settlements, including the Intercreditor Settlement as approved by the Intercreditor Settlement Order (the "<u>Plan Settlements</u>"), all of which are incorporated into and constitute integral parts of the Plan.  The Plan Settlements provide for, <u>inter alia</u>, (i) the dismissal

with prejudice of the Prepetition Lender Actions and the release of the Prepetition Lender Actions,

including any Claims or Causes of Action preserved pursuant to that certain Agreed Order

Extending the Challenge Deadline, ordered by the Bankruptcy Court on April 24, 2007 (Docket

No. 8848), (ii) the distribution of property that otherwise would have been distributed to holders of

Class 8 Prepetition Lender Claims to holders of Allowed Claims in Class 5 with respect to Mrs.

Cubbison's, New England Bakery, and Armour & Main, and (iii) the retention and treatment of

Subsidiary Interests as provided in Sections 4.1(f), 4.2(c) and 6.13 of the Plan.  The Plan

Settlements are interrelated and interdependent.  Together with the other provisions of the Plan,

they constitute a global settlement of all issues and disputes between and among the Debtors and

their major constituents.  In reaching the Plan Settlements, the Debtors considered the following: (i)

the probability of success in the litigation of intercreditor issues relating to whether the liabilities

and assets of certain of the Debtors and their Estates should be substantively consolidated for

certain purposes, including for purposes of making distributions under the Plan; (ii) the probability

of success in the litigation of causes of action (including avoidance actions) against certain of the

settling parties and the deterioration in reorganization prospects that would occur in the time

needed to prosecute the litigation; (iii) the difficulties to be encountered in collection of the

possible recoveries under those causes of action (including avoidance actions); (iv) the complexity

and likely duration of litigation related to causes of action (including avoidance actions) and the

attendant expense and inconvenience resulting from such litigation, (v) the potential harm to the

Debtors that could result from protracted litigation, including the expiration of the financing

commitments underlying the Plan and the inability to obtain replacement financing due to an

unprecedented turmoil in global financial markets, and (vi) the paramount interest of the

Claimholders to confirm and consummate a consensual plan of reorganization.  The Plan

Settlements fall within the range of reasonableness for the resolution of disputes and Claims and are fair and equitable, and in the best interests of the Debtors, the Reorganized Debtors, their creditors, and other parties in interest. The Plan Settlements have been negotiated at arms length and have been entered in good faith. The Plan Settlements avoid costly, time-consuming and risky litigation and pave the way toward achieving a successful reorganization.

WW.    Creation of the Creditors' Trust. The Plan provides for the establishment of the Creditors' Trust to be governed by the Trust Agreement, substantially in the form set forth in Plan Exhibit K (Docket no. 11579), for the benefit of holders of General Unsecured Claims and for the transfer of the Trust Assets into the Creditors' Trust. The Plan provides for the Debtors to transfer the Trust Assets to the Creditors' Trust on the Effective Date.

XX.    Distributions of New Securities Are Exempt. The New Convertible Secured Notes and the Series E Warrants to be distributed to the Prepetition Lenders (including the New Common Stock into which such New Convertible Secured Notes are convertible and the New Common Stock into which the Series E Warrants are exercisable) (collectively the "Exempt Securities") are being offered and sold under the Plan in exchange for Claims against or a Claim for an administrative expense in the Chapter 11 Cases concerning the Debtors or are securities issuable upon the exercise of such New Convertible Secured Note or Series E Warrants. Therefore, pursuant to section 1145(a) of the Bankruptcy Code, section 5 of the Securities Act of 1933, as amended (the "Securities Act"), and any state or local laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security ("State Securities Laws") do not apply to the offer and sale of the Exempt Securities.

YY.    Re-Sales of Exempt Securities Are Exempt. Resale of the Exempt Securities does not require registration under the Securities Act or the State Securities Laws unless the seller is an

"underwriter", as defined in section 1145(b)(1) of the Bankruptcy Code, with respect to the Exempt Security to be sold.

ZZ.    <u>Trust Indenture Act.</u>  The proposed means for issuance of the New Convertible Secured Notes to holders of Prepetition Lender Claims complies with applicable law, including the Trust Indenture Act, 15 U.S.C. §§ 77aaa, et al.

AAA.    <u>Cash-Settled Stock Appreciation Rights.</u>  The cash-settled stock appreciation rights to be provided to the Creditors' Trust and the Reorganized Debtors' unionized workforce (collectively, the "<u>Stock Appreciation Rights</u>") are contractual obligations of the applicable Reorganized Debtors tied to the performance of the Reorganized Debtors, are non-transferable and non-certificated, and will be settled only by a cash payment as required by each respective contract. As such, the Stock Appreciation Rights are not "equity securities" under Section 3(a)(11) of the Securities Exchange Act of 1934.

BBB.    <u>The Reorganized Debtors Will Not Be Insolvent Nor Left With Unreasonably Small Capital.</u>  As of the occurrence of the Effective Date and after taking into account the transactions contemplated by the Plan, on a consolidated basis (i) the fair saleable value of the property of the Reorganized Debtors will be not less than the amount that will be required to pay the probable liabilities on the Reorganized Debtors' then existing debts as they become absolute and matured considering all financing alternatives and potential asset sales reasonably available to the Reorganized Debtors and (ii) the Reorganized Debtors' capital is not unreasonably small in relation to their business or any contemplated or undertaken transaction.

CCC.    <u>Corporate Reorganization.</u>  As a result of the various transactions, transfers and conveyances contemplated by the corporate reorganization for which the Debtors were granted authority, pursuant to this Court's Order Pursuant to 11 U.S.C. § 363(b) Authorizing the Debtors to

Execute Documentation Relating to Prepetition Corporate Reorganization (Docket No. 2373) (the

"Corporate Reorganization Order"), to execute related documentation, each parcel of real property

listed on that certain Schedule of Ownership of Real Property filed in the Chapter 11 Cases on

December 4, 2008 (Docket No. 11686) (the "Real Property Ownership Schedule") is owned by the

Debtor indicated on such schedule.  To the extent transfers of property to reflect the ownership as

set forth on the Real Property Ownership Schedule as contemplated in the Corporate

Reorganization Order have not yet occurred but are made on or after the Effective Date, such

transfers are made under the Plan.

     DDD.  Retention Of Jurisdiction.  The Court properly may retain jurisdiction over the

matters set forth in Article XIII of the Plan.


Dated: Kansas City, Missouri
      December 5, 2008



          /s/ Jerry W. Venters
          UNITED STATES BANKRUPTCY JUDGE


Attorney for Debtor to Serve