IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

|  |  |  |
|---|---|---|
|  | x |  |
|  | : | Chapter 11 |
| In re: | : | Case No. 04-45814 (JWV) |
|  | : |  |
| INTERSTATE BAKERIES | : |  |
| CORPORATION, et al., | : | Jointly Administered |
|  | : |  |
| Debtors. | : |  |
|  | x |  |

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

**ORDER CONFIRMING AMENDED JOINT PLAN OF REORGANIZATION OF
INTERSTATE BAKERIES CORPORATION AND ITS AFFILIATED DEBTORS AND
DEBTORS-IN-POSSESSION DATED OCTOBER 31, 2008**

Upon the Solicitation Procedures Motion[1] dated October 9, 2008 (Docket no.

11354) of Interstate Bakeries Corporation ("IBC"), and eight[2] of its subsidiaries and affiliates,

debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order approving

(I) the form and manner of notice of the Debtors' hearing to approve the Disclosure Statement for

the Amended Joint Plan of Reorganization of Interstate Bakeries Corporation and Its Affiliated

Debtors and Debtors-in-Possession Dated October 31, 2008 (together with the exhibits thereto,

as such exhibits may be subsequently amended, supplemented, or otherwise modified (the

"Exhibits"), the "Plan"), (II) the Disclosure Statement, (III) the cure procedures for executory

---

1    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, the
Solicitation Procedures Order or in the Findings and Conclusions (defined below).

2    The following subsidiaries' and affiliates' chapter 11 cases are jointly administered with IBC's chapter 11 case:
Armour and Main Redevelopment Corporation; Baker's Inn Quality Baked Goods, LLC; IBC Sales
Corporation; IBC Services, LLC; IBC Trucking, LLC; Interstate Brands Corporation; New England Bakery
Distributors, L.L.C.; and Mrs. Cubbison's Foods, Inc.

contracts or unexpired leases to be assumed and reinstated pursuant to the Plan, (IV) the record

date, the voting deadline and certain other procedures, (V) the form and manner of notice of the

confirmation hearing and the procedures for filing objections to the Plan, and (VI) the procedures

for soliciting votes on the Plan and the notices to be distributed with respect thereto, and upon

the Solicitation Procedures Order, the Court held the Confirmation Hearing on December 5,

2008 to consider confirmation of the Plan.

   At the Confirmation Hearing, the Court admitted evidence, including (A) the

Court's review of the Certificates of Publication, the Affidavits of Mailing, and the Voting

Report, (B) the Debtors' Memorandum of Law (i) in Support of Confirmation of the Amended

Joint Plan of Reorganization of Interstate Bakeries Corporation and Its Affiliated Debtors and

Debtors-in-Possession Dated October 31, 2008 and (ii) in Response to Objections Thereto, filed

by the Debtors on December 3, 2008, (C) the Vance Declaration, the Sprung Declaration and the

Campagna Declaration, each filed by the Debtors in advance of the Confirmation Hearing, and

(D) all of the evidence proffered or adduced at the Confirmation Hearing, took judicial notice of

the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-

appointed agent, including all pleadings and other documents filed, all orders entered, and all

evidence and arguments made, proffered or adduced at, the hearings held before the Court during

the pendency of the Chapter 11 Cases, including the hearing held on October 30, 2008 to

consider the adequacy of the Disclosure Statement, and heard argument on confirmation of the

Plan and on objections filed in opposition thereto.  After due deliberation thereon and good and

sufficient cause appearing therefor, the Court made "Findings Of Fact And Conclusions Of Law

2

From Hearing On Confirmation Of Amended Joint Plan Of Reorganization Of Interstate

Bakeries Corporation And Its Affiliated Debtors And Debtors-In-Possession Dated October 31,

2008" ("Findings and Conclusions"), which are being entered concurrently with this Order.

Based on the foregoing, the Findings and Conclusions, the arguments and representations of

counsel made at the Confirmation Hearing in support of confirmation of the Plan, and on the

record in these Chapter 11 Cases:

THE COURT HEREBY ORDERS THAT:

1.      Confirmation.  The Plan, which includes the modifications set forth in

paragraph 68 herein, which are hereby incorporated into and constitute a part thereof, is

approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan and

the exhibits thereto are incorporated by reference into and are an integral part of this

Confirmation Order.  A conformed copy of the Plan (without Exhibits), is attached hereto as

Exhibit A.

2.      Objections.  All Objections to confirmation of the Plan that have not been

withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the

merits.

3.      Provisions Of Plan And Order Nonseverable And Mutually Dependent.

The provisions of the Plan, this Confirmation Order and the Findings and Conclusions are

nonseverable and mutually dependent.

4.      Classification of Claims/Interests.  The classification of Claims and

Interests for purposes of the distributions to be made under the Plan shall be governed solely by

3

the terms of the Plan.  The classifications set forth on any ballots or supplemental ballots

tendered to or returned by the Claimholders in connection with voting on the Plan (a) were set

forth on such ballots or supplemental ballots solely for purposes of voting to accept or reject the

Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise

affect, the actual classification of such Claims under the Plan for distribution purposes, (c) may

not be relied upon by any Claimholder as representing the actual classification of such Claims

under the Plan for distributions purposes, and (d) shall not be binding on the Reorganized

Debtors, the Estates, or the Debtors.

       5.      <u>Effects Of Confirmation; Immediate Effectiveness; Successors And

Assigns</u>.  Fed. R. Civ. P. 62(a) and the stay provided by Bankruptcy Rule 3020(e) shall not apply

to this Confirmation Order.  The Debtors are authorized to consummate the Plan at any time after

entry of this Confirmation Order, subject to any deadlines and conditions to consummation

contained in the Plan.  Subject to the occurrence of the Effective Date under the Plan, and

notwithstanding any otherwise applicable law, immediately upon entry of this Confirmation

Order, the terms of the Plan (including the Exhibits thereto and all documents and agreements

executed pursuant to the Plan) and this Confirmation Order shall be binding on (a) the Debtors,

(b) the Reorganized Debtors, (c) all holders of Claims against and Interests in the Debtors,

whether or not Impaired under the Plan and whether or not, if Impaired, such holders voted on or

voted to accept or reject the Plan, (d) each Person acquiring property under the Plan, (e) any

other party-in-interest, (f) any Person making an appearance in these Chapter 11 Cases, and (g),

to the extent acting in such capacities in relation to the Plan, each of the foregoing's respective

heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors,

agents, representatives, attorneys, beneficiaries, or guardians.  Upon the occurrence of the

Effective Date with respect to each Debtor, the Plan shall be deemed substantially consummated

as to such Debtor.

6.     Continued Corporate Existence; Vesting Of Assets and Transfer of Trust

Assets.  On the Effective Date, all property of the Estates shall vest or revest as provided in

Section 11.1 of the Plan, and the Trust Assets shall be transferred to the Creditors' Trust as

provided in Section 10.2 of the Plan.  As of the Effective Date, each of the Reorganized Debtors

may operate its business and use, acquire, and dispose of property and settle and compromise

Claims without supervision of the Court, free of any restrictions of the Bankruptcy Code or

Bankruptcy Rules, other than those restrictions expressly imposed by the Plan, this Confirmation

Order, or the Intercreditor Settlement Order (which Intercreditor Settlement Order imposes

restrictions solely with respect to Claims Administration).

7.     Intercompany Claims and Interests in the Subsidiary Debtors.  The

treatment of Intercompany Claims provided in Sections 4.1(d) and 4.2(b) of the Plan and the

treatment of Interests in the Subsidiary Debtors provided in Sections 4.1(f) and 4.2(c) of the Plan

are approved in their entirety.

8.     Release Of Liens.  Except as otherwise provided in the Plan or this

Confirmation Order, or in any contract, instrument, release or other agreement or document

entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds

of trust, liens or other security interests against the property of any Estate are fully released and

discharged (except to the extent Reinstated under the Plan), and all right, title and interest of any

holder of such a mortgage, deed of trust, lien or other security interest, including any right to any

collateral thereunder, shall revert to the applicable Reorganized Debtor and its successors and

assigns irrespective of any filing or recordation of any releases (which filings and releases shall

be made by (i) the applicable parties, upon the reasonable request by the Debtors or the

Reorganized Debtors or (ii) the Debtors or the Reorganized Debtors).

9.      Transfers.  With respect to the transfers of property to the Debtors as

contemplated in the Plan, including to the extent the revesting of assets of the Debtors in the

Reorganized Debtors pursuant to the Plan are deemed to constitute "transfers" of property, such

transfers of property to the Reorganized Debtors (a) are or shall be legal, valid, and effective

transfers of property, (b) vest or shall vest the Reorganized Debtors with good title to such

property, free and clear of all liens, charges, Claims, encumbrances, or Interests, except as

expressly provided in the Plan or this Confirmation Order, (c) do not and shall not constitute

avoidable transfers under the Bankruptcy Code or under applicable non-bankruptcy law, and (d)

do not and shall not subject the Reorganized Debtors to any liability by reason of such transfer

under the Bankruptcy Code or under applicable non-bankruptcy law, including any laws

affecting successor or transferee liability.  Further, the transfers of property by the Debtors to

Claimholders under the Plan are for good consideration and value.

10.      Return of Deposits.  All utilities, including any person that received a

deposit or other form of adequate assurance of performance pursuant to section 366 of the

Bankruptcy Code during the Chapter 11 Cases (collectively, the "Deposits"), including gas,

6

electric, telephone, and sewer, shall return such Deposits to the Debtors and/or the Reorganized

Debtors, as the case may be, either by setoff against postpetition indebtedness or by cash refund,

within 45 days following the Effective Date.

          11.    <u>Discharge of Debtors</u>.

          (a)  Except as expressly provided in the Plan or this Confirmation Order,

the Debtors are discharged effective upon the Effective Date from any "debt" (as that term is

defined in section 101(12) of the Bankruptcy Code), and the Debtors' liability in respect thereof

is extinguished completely, whether the debt is reduced to judgment or not, liquidated or

unliquidated, contingent or noncontingent, asserted or unasserted, fixed or unfixed, matured or

unmatured, disputed or undisputed, legal or equitable, or known or unknown, if the debt arose

from any agreement of the Debtors entered into or obligation of the Debtors incurred before the

Effective Date or from any conduct of the Debtors prior to the Effective Date or otherwise arose

before the Effective Date, including all obligations for interest, if any, on any such debts,

whether such interest accrued before, on or after the Petition Date.

          (b)  Pursuant to and to the fullest extent permitted by section 1141(d) of

the Bankruptcy Code, except as otherwise specifically provided in the Plan or in this

Confirmation Order, confirmation of the Plan discharges and releases, effective as of the

Confirmation Date (but subject to the occurrence of the Effective Date), the Debtors, the

Reorganized Debtors and the Estates (x) from all Claims and Causes of Action, whether known

or unknown, and (y) from liabilities of, liens on, obligations of, rights against, and Interests in

the Debtors or any of their assets or properties, in each case regardless of whether any property

has been distributed or retained pursuant to the Plan on account of such Claims, Causes of

Action, rights, liabilities, liens, obligations and Interests, and in each case including (x) Claims,

Causes of Actions, rights, liabilities, liens, obligations and Interests that arose before the

Confirmation Date, (y) any Claims, Causes of Actions, rights, liabilities (including withdrawal

liabilities), liens, obligations and Interests to the extent such Claims, Causes of Actions, rights,

liabilities (including withdrawal liabilities), liens, obligations and Interests  relate to services

performed by employees of the Debtors prior to the Petition Date and that arise from a

termination of employment or a termination of any employee or retiree benefit program

regardless of whether such termination occurred prior to or after the Confirmation Date, and (z)

all Claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in

each case whether or not (a) a proof of claim or interest based upon such Claims, Causes of

Action, rights, liabilities, liens, obligations or Interests is filed or deemed filed under section 501

of the Bankruptcy Code, (b) a Claim or Interest based upon such Claims, Causes of Action,

rights, liabilities, liens, obligations or Interests is allowed under section 502 of the Bankruptcy

Code, or (c) the holder of such a Claim, Cause of Action, right, liability, lien, obligation or

Interests accepted the Plan.  This Confirmation Order shall be a judicial determination of the

discharge of all Claims against and Interests in the Debtors, subject to the Effective Date

occurring.

       (c)  As of the Confirmation Date, except as provided in the Plan or in the

Confirmation Order (including with respect to the indemnification obligations referenced in the

second sentence of Section 6.4 of the Plan) or under the terms of the documents evidencing and

orders approving the New Credit Facilities, the Investment Agreement, the Commitment Letter, the New Third Lien Term Loan Credit Facility, the New Convertible Secured Note Indenture, any other Exit Facility Documents and the Trust Stock Appreciation Rights, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Confirmation Date.  In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, this Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all Interests in IBC, and in the Brands Preferred Stock, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.

12.    <u>Releases, Limitations Of Liability And Indemnification</u>.  The releases set forth in Sections 11.4 and 11.5 of the Plan, the exculpation and limitation of liability provisions set forth in Section 11.7 of the Plan, and the indemnification obligations set forth in Section 11.8 of the Plan are incorporated in this Confirmation Order as if set forth in full herein and are hereby approved.

13.    <u>Injunctions</u>.  Except as otherwise specifically provided in the Plan and except as may be necessary to enforce or remedy a breach of the Plan, from and after the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the

Debtors and any successors, assigns or representatives of the foregoing shall be precluded and

permanently enjoined from: (i) commencing or continuing in any manner any Claim,

employment of process, action or other proceeding of any kind with respect to any Claim,

Interest or any other right against any Reorganized Debtor or the Creditors' Trust, which they

possessed or may possess prior to the Effective Date, (ii) the enforcing, attaching, collecting,

offsetting, or recovering by any manner or means of any judgment, award, decree or order with

respect to any Claim, Interest, or any other right against any Reorganized Debtor, which they

possessed or may possess prior to the Effective Date, (iii) creating, perfecting or enforcing any

lien or encumbrance of any kind with respect to any Claim, Interest or any other right against any

Reorganized Debtor or the Creditors' Trust, which they possessed or may possess prior to the

Effective Date, (iv) asserting a setoff, right of subrogation or recoupment of any kind against any

debt, liability, or obligation due to the Debtors, and (v) asserting any Claims or Causes of Action

that are satisfied, released, or discharged hereby and under the Plan to the fullest extent

permissible under applicable law, including to the extent provided for or authorized by Section

11.4 of the Plan and sections 524 and 1141 of the Bankruptcy Code.

   14. <u>Automatic Stay</u>.  All injunctions and stays in effect in the Chapter 11

Cases pursuant to section 105 or 362(a) of the Bankruptcy Code or otherwise and extant on the

Confirmation Date shall continue to be in full force and effect until the Effective Date, at which

time they shall be dissolved and of no further force or effect, and be replaced by the injunctions

set forth herein and in sections 524 and 1141 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that

nothing herein shall bar the filing of financing documents (including Uniform Commercial Code

10

financing statements, security agreements, leases, mortgages, trust agreements and bills of sale)

or the taking of such other actions as are necessary to effectuate the transactions specifically

contemplated by the Plan or by this Confirmation Order prior to the Effective Date.

15. <u>Matters Relating To Implementation Of The Plan; General Authorizations</u>.

The approvals and authorizations specifically set forth in this Confirmation Order are

nonexclusive and are not intended to limit the authority of any Debtor or Reorganized Debtor or

any officer or director thereof to take any and all actions necessary or appropriate to implement,

effectuate and consummate any and all documents or transactions contemplated by the Plan or

this Confirmation Order.  Pursuant to this Order and applicable law (including section 303 of the

Delaware General Corporation Law, California Corporations Code Section 1400-1403, and any

analogous laws in the jurisdiction of organization of each Debtor), the Debtors and the

Reorganized Debtors are authorized and empowered, without action of their respective

stockholders or boards of directors, but subject to consent rights, if any, set forth in the Plan, to

take any and all such actions as any of their executive officers may determine are necessary or

appropriate to implement, effectuate and consummate any and all documents or transactions

contemplated by the Plan or this Confirmation Order, including: (a) to authorize or implement

the Restructuring Transactions, if any; (b) to enter into, execute and deliver, acknowledge, adopt

or amend, as the case may be, any of the contracts, leases, instruments, releases and other

agreements or documents and plans, including deeds, assignments, conveyances, and other

assurances, documents, instruments of transfer, Uniform Commercial Code financing statements,

trust agreements, mortgages, indentures, security agreements, and bills of sale to be entered into,

11

executed, delivered, acknowledged, adopted or amended in connection with the Plan and the

transactions contemplated by the Plan, and, following the Effective Date, each of such contracts,

leases, instruments, releases and other agreements shall be a legal, valid and binding obligation

of, and enforceable against, the applicable Debtor or Reorganized Debtor and any other Person

that is a party thereto, in accordance with its terms and is entered into for good and valuable

consideration, including the benefits of the Plan; (c) to issue for distribution or reserve for

issuance in accordance with the terms of the Plan, the New Common Stock and the Warrants

(upon such issuance, all such shares or warrants shall be duly authorized and validly issued and

outstanding, fully paid, nonassessable, free and clear of any mortgage, lien, pledge, security

interest or other encumbrance of any kind, and not subject to pre-emptive or similar rights of

third parties); (d) to issue the New Convertible Secured Notes; (e) enter into expense

reimbursement agreements relating to the Exit Facility Documents; and (f) to authorize any of

the Debtors or Reorganized Debtors to engage in any of the activities set forth in this paragraph

or otherwise contemplated by the Plan.  Subject to consent rights, if any, set forth in the Plan,

each of the Chairman of the Board of Directors, the Chief Executive Officer, the Chief Financial

Officer and the General Counsel of the Debtors or Reorganized Debtors or their respective

designees shall be authorized to execute, deliver, file, or record such contracts, instruments,

releases, indentures, and other agreements or documents, and take such actions as may be

necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan,

this Confirmation Order, and any and all documents or transactions contemplated by the Plan or

this Confirmation Order, all without further application to or order of the Court and whether or

not such actions or documents are specifically referred to in the Plan, the Disclosure Statement, the Solicitation Procedures Order, this Confirmation Order, or the exhibits or appendices to any of the foregoing, and the signature of such officer on a document shall be conclusive evidence of such officer's determination that such document and any related actions are necessary and appropriate to effectuate or further evidence the terms and conditions of the Plan, this Confirmation Order or other documents or transactions contemplated by the Plan or this Confirmation Order.  The Secretary or any Assistant Secretary of each Debtor or Reorganized Debtor is authorized to certify or attest to any of the foregoing actions.  To the extent that, under applicable nonbankruptcy law, any of the foregoing actions otherwise would require the consent or approval of the stockholders or the board of directors or other governing body of any of the Debtors or Reorganized Debtors, this Confirmation Order, pursuant to section 1142 of the Bankruptcy Code, shall constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the stockholders and directors of the appropriate Debtor or Reorganized Debtor; provided, however, consent and approval rights, if any, set forth in the Plan shall be preserved.  All such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Court and shall be deemed effective pursuant to applicable law (including section 303 of the Delaware General Corporation Law, California Corporations Code Section 1400-1403, and any analogous laws in the jurisdiction of organization of each Debtor) and without further corporate act or action under applicable law.

          16.     _Directors And Officers Of Reorganized Debtors_.  The existing officers or managing members of the Debtors shall remain in their current capacities as officers of the

13

Reorganized Debtors, subject to the ordinary rights and powers of the board of directors or

equityholders to replace them.  The Court approves the appointment of the following eight (8)

initial members of the board of directors of Reorganized IBC as of and immediately following

the Effective Date: (i) Craig Jung, (ii) John Cahill, Chairman, (iii) Greg Murphy, Vice Chairman,

(iv) Michael Duran, (v) Chris Minnetian, (vi) Scott Spielvogel, (vii) David Reganato and (viii)

Andrew J. Herenstein.  The existing directors of each Subsidiary Debtor shall remain in their

current capacities as directors of the applicable Reorganized Subsidiary Debtor, subject to the

ordinary rights and powers of the board of directors or equityholders to replace them.

       17.    <u>Approval Of Employment, Retirement, Indemnification, And Other</u>

<u>Related Agreements And Incentive Compensation Programs</u>.  The proposed terms of

employment of certain key employees of the Reorganized Debtors, to be effective on the

Effective Date, as summarized at Plan <u>Exhibit N</u> (Docket no. 11581) and in the agreements and

arrangements with respect thereto described prior to or at the Confirmation Hearing, are hereby

approved in their entirety.  With the exception of those individuals (i) whose employment terms

are summarized at Plan <u>Exhibit N</u> and (ii) the terms of whose employment agreements are

subject to a rejection motion as of the date of the Confirmation Hearing, to the extent that any of

the Debtors has in place as of the Effective Date employment, severance (change in control),

retirement, indemnification and other agreements with their respective active directors, officers,

managing members and employees who will continue in such capacities or a similar capacity

after the Effective Date, or retirement income plans, welfare benefit plans and other plans for

such Persons, such agreements, programs and plans shall remain in place after the Effective

14

Date, and the Reorganized Debtors shall continue to honor such agreements, programs and plans

except to the extent provided herein or in the Plan or by order of the Court, without prejudice to

the Reorganized Debtors' authority to modify or eliminate any such agreements, programs or

plans as permitted under applicable non-bankruptcy law.  Benefits provided under such

agreements or plans may include benefits under qualified and non-qualified retirement plans;

health and dental coverage; short and long-term disability benefits; death and supplemental

accidental death benefits; vacation; leased car; financial consulting, tax preparation and estate

planning as well as an annual physical examination, each paid or provided commensurate with

an employee's position in accordance with the applicable Reorganized Debtor's policies then in

effect.  Such agreements and plans also may include equity, bonus and other incentive plans in

which officers, managing members and other employees of the Reorganized Debtors may be

eligible to participate; provided, however, such equity, bonus and other incentive plans shall not

provide for the issuance of New Common Stock and to the extent that such equity, bonus and

other incentive plan provides for the issuance of Existing Securities, such provision shall be

deemed null and void and the officers, managing members and other employees shall waive any

right to enforce such provisions; provided, further, however, that pursuant to the Long Term

Incentive Plan, there shall be reserved for issuance to certain members of management, directors,

and other employees of the Reorganized Debtors a certain number of shares of New Common

Stock and other securities all as more fully described in Section 6.8 of the Plan.  Notwithstanding

anything contained herein or in the Plan to the contrary, the terms of the KERP shall not be

modified, altered, or amended.  Retention Bonuses (as defined in the KERP) shall be paid in the amounts and at such times as contemplated by the KERP.

18.     Issuance of New Convertible Secured Notes, Warrants and Cash-Settled Stock Appreciation Rights.  The provisions of Section 6.11 of the Plan are approved in their entirety.  Specifically, the terms of the New Convertible Secured Notes and the Warrants, upon terms substantially similar to those approved by the Court pursuant to the Commitment Letter Approval Order and the Investment Agreement Order and giving effect to the First Amendment to the Investment Agreement, dated as of December 1, 2008, are hereby approved.  The Reorganized Debtors are hereby authorized to execute and perform their obligations under the New Convertible Secured Note Indenture and the Warrants and to issue the New Convertible Secured Notes and the Warrants, upon terms substantially similar to those approved by the Court pursuant to the Commitment Letter Approval Order and the Investment Agreement Order and giving effect to the First Amendment to the Investment Agreement, dated as of December 1, 2008, in accordance with the terms of the Transaction, without further approval of this Court or the Reorganized Debtors' boards of directors.  The Reorganized Debtors are hereby authorized to issue the Stock Appreciation Rights to the Creditors' Trust and on account of the Reorganized Debtors' unionized workforce.

19.     Exit Facility Documents.  The provisions of Section 6.12 of the Plan are approved in their entirety.  Specifically, the terms of the Exit Facility Documents, upon terms substantially similar to those approved by the Court pursuant to the Commitment Letter Approval Order and the Investment Agreement Order and giving effect to the First Amendment

16

to the Investment Agreement, dated as of December 1, 2008, and the amendment to the Term

Loan Facility Commitment Papers dated as of December 4, 2008, are hereby approved.  The

Reorganized Debtors are hereby authorized to execute and perform their obligations under the

Exit Facility Documents, together with such other documents as any of the applicable lenders

may reasonably require in order to effectuate the treatment afforded to such parties under the

respective Exit Facility Documents, including (i) documentation regarding letters of credit

replacing or "backing up" the Prepetition LCs and the letters of credit outstanding as of the

Effective Date under the DIP Facility and (ii) documentation of the cancellation or cash

collateralization of such letters of credit, without further approval of this Court or of the

Reorganized Debtors' boards of directors.

        20.    _Validity of Exit Facility Documents and Liens Granted Thereunder_.

Subject to the occurrence of the Effective Date, the obligations under the Exit Facility

Documents shall, upon execution, constitute legal, valid, binding, and authorized obligations of

each of the parties thereto, enforceable in accordance with their terms.  Subject to the occurrence

of the Effective Date, the security interests, liens, and mortgages granted under or in connection

with the Exit Facility Documents shall constitute legal, valid, and duly perfected liens against the

Collateral (as defined in the Exit Facility Documents) of the priority specified in such

documents.  Such security interests, liens, and mortgages (the "Exit Liens") shall constitute legal,

valid, and duly perfected liens against the Collateral.  The Exit Liens shall be deemed to be

created, valid, and perfected without any requirement of filing or recording of financing

statements, mortgages, or other evidence of such security interests, liens, and mortgages and

without any approvals or consents from governmental entities or any other persons and

regardless of whether or not there are any errors, deficiencies, or omissions in any property

descriptions attached to any filing and no further act shall be required for the perfection of the

liens and security interests.  The obligations of the Reorganized Debtors arising pursuant to the

Exit Facility Documents are in exchange for fair and reasonably equivalent value and do not

constitute a preferential transfer or fraudulent transfer or fraudulent conveyance under applicable

federal or state laws and will not subject the lenders and noteholders under such documents to

any liability by reason of incurrence of such obligation or grant of such Exit Liens under

applicable federal or state laws, including, but not limited to, successor or transferee liability.

    21. <u>Exemption From Certain Taxes And Recording Fees</u>.  Pursuant to section

1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security, or the

making, delivery, filing or recording of any instrument of transfer under, or in connection with,

the Plan shall not be taxed under any law imposing a recording tax, stamp tax, transfer tax or

similar tax.  This shall include any transfer and conveyance of real property necessary to reflect

the ownership of real property as indicated on Real Property Ownership Schedule as well as any

transfers in connection with the Restructuring Transactions.  Furthermore, without limiting the

foregoing, any transfers from a Debtor to a Reorganized Debtor, the Creditors' Trust or any other

Person pursuant to or as contemplated by the Plan, or any agreement regarding the transfer of

title to or ownership of, or the granting of a mortgage, deed of trust, deed to secure debt or other

lien on or security interest in, any of the Debtors' property in the United States pursuant to or as

contemplated by the Plan, will not be subject to any document recording tax, stamp tax,

18

conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate

transfer tax, excise tax, mortgage recording tax, Uniform Commercial Code filing or recording

fee, or other similar tax or governmental assessment.  All filing or recording officers (or any

other Person with authority over any of the foregoing), wherever located and by whomever

appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall

forego the collection of any such tax or governmental assessment, and shall accept for filing and

recordation any of the foregoing instruments or other documents without the payment of any

such tax or governmental assessment.  The Court shall retain specific jurisdiction with respect to

these matters.

      22.   <u>Assumption of Executory Contracts and Unexpired Leases</u>.  The

provisions of Article VII of the Plan relating to assumption of executory contracts and unexpired

leases are approved.

      (a)  <u>Non-Union Contracts and Leases</u>.  Except with respect to the Union

Contracts, only those executory contracts (including licenses) and unexpired leases to which the

Debtors (or any of them) are a party that are specifically listed on Plan <u>Exhibit O</u>, or that were

entered into postpetition, shall be deemed automatically assumed and Reinstated in accordance

with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the

Effective Date.  Neither the inclusion by the Debtors of a contract or lease on Plan <u>Exhibit O</u> nor

anything contained in the Plan shall constitute an admission by the Debtors that such lease or

contract is an unexpired lease or executory contract or that any Debtor, or any Affiliates of any

Debtor, has any liability thereunder.  All executory contracts (including licenses) and unexpired

19

leases assumed by the Debtors during the Chapter 11 Cases or under the Plan shall be assigned

and transferred to, and remain in full force and effect for the benefit of, the Reorganized Debtors,

notwithstanding any provision in such contract or lease (including those described in sections

365(b)(2) and 365(f) of the Bankruptcy Code and any such provision implicated by the

consummation of the Plan or any transaction contemplated by the Plan, including any change in

ownership upon issuance of the New Common Stock under the Plan) that prohibits or restricts

such assignment or transfer or that enables or requires termination or modification of such

contract or lease.  This Confirmation Order shall constitute an order approving such assumptions,

described in Section 7.1 of the Plan, pursuant to section 365 of the Bankruptcy Code, as of the

Effective Date.  Each executory contract (including licenses) and unexpired lease that is assumed

and relates to the use, ability to acquire, or occupancy of real property shall include (a) all

modifications, amendments, supplements, restatements, or other agreements made directly or

indirectly by any agreement, instrument, or other document that in any manner affect such

executory contract or unexpired lease and (b) all executory contracts, unexpired leases,

agreements or other documents appurtenant to the premises, including all easements, licenses,

permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal

easement agreements, and any other interests in real estate or rights in rem related to such

premises, unless any of the foregoing agreements has been rejected pursuant to a Final Order of

the Bankruptcy Court or is otherwise rejected as a part of the Plan.

      (b) Union Contracts.  Each Union Contract to which the Debtors are a

party shall be deemed automatically assumed and Reinstated as of the Effective Date, unless

20

such Union Contract (a) shall have been previously rejected by the Debtors, (b) is the subject of a

motion to reject pursuant to section 1113 of the Bankruptcy Code filed on or before the

Confirmation Date, or (c) expired prior to the Effective Date and/or is no longer executory on the

Effective Date by its own terms.  This Confirmation Order shall constitute an order of the Court

approving such assumptions, pursuant to section 365(b)(1) of the Bankruptcy Code, as of the

Effective Date.

23.     Payments Related to Assumption of Executory Contracts and Unexpired

Leases. This Confirmation Order shall constitute an order approving the assumption of executory

contracts and unexpired leases set forth on Exhibit O to the Plan, pursuant to section 365 of the

Bankruptcy Code, which assumption shall be effective as of the Effective Date.  The provisions

(if any) of each executory contract or unexpired lease to be assumed and Reinstated under the

Plan which are or may be in default shall be satisfied solely by Cure.  Objections ("Cure Amount

Objections") to assumption or rejection including Cure Amount Objections to Cure related to

non-monetary defaults, must have been raised in an objection filed on or before December 1,

2008.  If no Cure Amount Objection was timely filed and served, the non-Debtor counterparty to

the contract or lease being assumed or Reinstated is deemed to have consented to Cure Amount

(as defined in the Solicitation Procedures Order) and to the assumption or reinstatement of the

contract or lease, and the Cure Amount set forth in the Cure Notice (as defined in the Solicitation

Procedures Order) or as subsequently agreed to by the Debtors prior to the Confirmation Hearing

shall be controlling notwithstanding anything to the contrary in any assumed contract or lease or

other document as of the date of the Cure Notice, and the party to such contract or lease shall be

forever barred from objecting to the assumption of the contract or lease and from asserting,

collecting, or seeking to collect any additional amounts relating thereto against the Debtors or

Reorganized Debtors.

24.    <u>Rejection of Executory Contracts and Unexpired Leases</u>.  The provisions

of Article VII of the Plan relating to rejection of executory contracts and unexpired leases are

approved.

(a) <u>Non-Union Contracts and Leases</u>. Except with respect to the Union

Contracts and except with respect to executory contracts and unexpired leases that have

previously been assumed or are the subject of a motion to assume, or a notice of assumption

served pursuant to an order of the Court, on or before the Confirmation Date, all executory

contracts and unexpired leases not assumed pursuant to Section 7.1 of the Plan (collectively, the

"<u>Rejected Contracts and Leases</u>") shall be deemed automatically rejected as of the Effective Date

or such earlier date as the Debtors may have unequivocally terminated their performance under

such lease or contract.  This Confirmation Order shall constitute an order of the Court approving

such rejections pursuant to section 365 of the Bankruptcy Code.  All of the Rejected Contracts

and Leases shall be rejected only to the extent that any such contract or lease constitutes an

executory contract or unexpired lease.

(b) <u>Union Contracts</u>.  Any rejection of a Union Contract shall proceed

only by motion made pursuant to section 1113 of the Bankruptcy Code.

25.    <u>Bar Date For Rejection Damages Claims And Related Procedures</u>.  If

rejection by the Debtors (pursuant to the Plan or otherwise) of an executory contract or an

unexpired lease results in a Claim by the non-Debtor party or parties to such contract or lease,

then such Claim shall be forever barred and shall not be enforceable against either the Debtors or

the Reorganized Debtors or such entities' properties unless a proof of claim is filed with the

Clerk of the Court and served upon counsel to the Debtors within thirty (30) days after service of

the earlier of (a) notice of entry of this Confirmation Order or (b) other notice that the executory

contract or unexpired lease has been rejected; provided, however, that the foregoing requirement

to file a proof of claim shall not be applicable to any such Claim that was previously allowed by

Final Order of the Court.

26.     DIP Facility Claim.  On the Effective Date, all claims arising under the

DIP Facility shall be allowed in an amount to be agreed upon by the Debtors and the holders of

Claims under the DIP Facility ("DIP Claimholders"), and all obligations of the Debtors under the

DIP Facility shall be paid in full in Cash or otherwise satisfied in a manner acceptable to such

DIP Claimholders in accordance with the terms of the DIP Facility and the DIP Credit

Agreement including replacement and cancellation, securing by "back up" letters of credit issued

by an institution acceptable to the bank that issued the letters of credit outstanding under the DIP

Facility, or cash collateralization at 105% of the face amount of all letters of credit issued and

outstanding under the DIP Credit Facility as of the Effective Date on terms in form and

substance (a) satisfactory to the bank issuer of such letter of credit and (b) reasonably

satisfactory to Equity Investors and the Prepetition Investors.  Upon compliance with the

preceding sentence, all liens and security interests granted to secure such obligations shall be

deemed cancelled and shall be of no further force and effect.  Upon compliance with the first

sentence of this paragraph, to the extent that the DIP Lenders or the DIP Agent have filed or

recorded publicly any liens and/or security interests to secure the Debtors' obligations under the

DIP Facility, the DIP Lenders or the DIP Agent, as the case may be, shall take commercially

reasonable steps requested by the Debtors or Reorganized Debtors that are necessary to satisfy,

cancel and/or extinguish such publicly-filed liens and/or security interests.

27.    <u>Prepetition Credit Facility Claims</u>.  On the Effective Date, each holder of

an Allowed Prepetition Lender Claim shall receive in full satisfaction, settlement, release and

discharge of and in exchange for such Claim, its Pro Rata share of each component of the

Prepetition Lenders Plan Distribution Property, with the amount of each Claimholder's Pro Rata

share to be determined by a fraction, the numerator of which is equal to the amount of such

Claimholder's Allowed Prepetition Lender Claim, and the denominator of which is equal to the

aggregate amount of all Allowed Prepetition Lender Claims.  Adequate Protection Claims shall

be deemed satisfied in full by payments made pursuant to and in accordance with the DIP

Facility Order.  On the Effective Date, each issued and outstanding letter of credit under the

Prepetition Credit Agreement (each a "<u>Prepetition LC</u>") shall be replaced and cancelled, secured

by "back up" letters of credit issued by an institution acceptable to the issuer of the Prepetition

LC, or cash collateralized at 105% of the face amount of each Prepetition LC on terms in form

and substance (a) satisfactory to the bank issuer of such Prepetition LC and (b) reasonably

satisfactory to Equity Investors and the Prepetition Investors.

28.    <u>Professional Claims And Final Fee Applications</u>. The provisions of

Section 9.2 of the Plan shall govern Professional Claims, including final fee applications,

payment of interim amounts, the Holdback Amount, the Holdback Escrow Account, and post-Effective Date compensation and retention, and deadlines and procedures relating thereto.

29.     <u>Substantial Contribution Compensation And Expenses Bar Date</u>.  Any Person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), 503(b)(4), and 503(b)(5) of the Bankruptcy Code must file an application with the Clerk of the Court on or before a date which is forty-five (45) days after the Effective Date (the "<u>503 Deadline</u>"), and serve such application on counsel for the Debtors and as otherwise required by the Court and the Bankruptcy Code on or before the 503 Deadline, or be forever barred from seeking such compensation or expense reimbursement.

30.     <u>Other Administrative Claims</u>.  All other requests for payment of an Administrative Claim (other than as set forth in Sections 9.2, 9.3 and 9.6 of the Plan, and other than with respect to Cure Claims) must be filed with the Bankruptcy Court and served on counsel for the Debtors no later than thirty (30) days after the Effective Date.  Unless the Debtors or the Reorganized Debtors object to an Administrative Claim by the Claims Objection Deadline, such Administrative Claim shall be deemed allowed in the amount requested.  In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim (a) which is paid or payable by any Debtor in the ordinary course of business or (b) the payment of which has been approved by the Bankruptcy Court.<u>Exemption</u>

25

From Securities Laws.  Pursuant to and to the fullest extent permitted by section 1145 of the Bankruptcy Code, Section 5 of the Securities Act and any State Securities Laws do not apply to the offer, sale, issuance, and distribution of the Exempt Securities, and resale of the Exempt Securities does not require registration under the Securities Act or the State Securities Law unless the seller is an "underwriter", as defined in section 1145(b)(1) of the Bankruptcy Code, with respect to the Exempt Security to be sold.

      32.    Restructuring Transactions.  The Restructuring Transactions contemplated by Section 6.13 of the Plan and described in Plan Exhibit I are approved, and the Debtors and Reorganized Debtors and their officers are authorized, subject to the consent rights contained in the Plan, to execute such documents as may be reasonably required in order to effectuate the Restructuring Transactions.  Each and every federal, state, and local governmental agency or department is hereby directed to accept for filing and recording any and all documents and instruments necessary or appropriate to consummate the transactions contemplated by the Restructuring Transactions.  Further, each and every federal, state and local government agency is: (a) directed to continue or renew all valid construction permits, use and occupancy permits, business licenses, franchise licenses and other regulatory approvals, consents, licenses and permits of any kind for the surviving parties of the Restructuring Transactions; and (b) directed to return to each Reorganized Debtor, whether by setoff against postpetition indebtedness or by refund, within 20 days after the Effective Date, any deposits or escrowed funds held by that agency or department.

33.    <u>Formation Of And Provisions Regarding The Creditors' Trust</u>.  The

formation, rights, powers, duties, structure, obligations, and related matters pertaining to the

Creditors' Trust shall be governed by Article X of the Plan and the Trust Agreement.

34.    <u>Trust Agreement</u>.  The Trust Agreement substantially in the form of Plan

Exhibit K (Docket no. 11579) is approved.  Pursuant to the Intercreditor Settlement Order,

Section 6.16 of the Plan and this Confirmation Order, the Debtors and the Reorganized Debtors

are authorized to execute and to take any action necessary or appropriate to implement,

effectuate or consummate the Trust Agreement.

35.    <u>Valuation of Trust Assets</u>.  The Creditors' Trust Agreement is hereby

amended to provide that any valuations of the property held by the trust made by the Trustee, on

the one hand, and by any Trust Beneficiaries, on the other, will be consistent with each other and

those valuations shall be used for all federal income tax purposes.

36.    <u>Approval Of Trustee</u>.  U.S. Bank National Association, who has been

designated in accordance with the Plan as the Trustee of the Creditors' Trust, is "disinterested,"

as defined by section 101(14) of the Bankruptcy Code.  The appointment of the Trustee under

the Trust Agreement and pursuant to the Creditors' Committee's Notice (Docket no. 11596) is

hereby approved, and the Trustee of the Creditors' Trust is hereby authorized to carry out all

duties as set forth in the Plan, this Confirmation Order, and the Trust Agreement.

37.    <u>Trust Advisory Board</u>.  The Court approves the appointment of Michael

Locker and Michael Glanzer (subject to their acceptance) as members of the Trust Advisory

Board, and a third member to be selected on or prior to the Effective Date.  The Trust Advisory

27

Board is hereby authorized to carry out all duties as set forth in the Plan, this Confirmation

Order, and the Trust Agreement.  Matters pertaining to the Trust Advisory Board shall be

governed by Section 10.4 of the Plan and by the Trust Agreement.

38.    Communications with Trustee.  The Reorganized Debtors and, to the

extent of matters within the scope of rights and powers of the Creditors' Trust, the Trustee of the

Creditors' Trust, shall each constitute successors of the Debtors for purposes of continuing any

attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any

document, information or communication (whether written or oral) between the Debtors or the

Reorgranized Debtors and any of their attorneys.

39.    Resolution Of Claims And Interests.  Unless otherwise ordered by the

Court, any Claim that is not an Allowed Claim shall be determined, resolved, or adjudicated in

accordance with the terms of the Intercreditor Settlement Order, the Plan and the Trust

Agreement.  The Debtors or the Reorganized Debtors may (a) until 180 days after the Effective

Date (unless extended by order of the Court) file objections in the Court to the allowance of any

Claim or Interest (whether or not a proof of Claim or Interest has been filed) and/or (b) amend

their schedules at any time before their Chapter 11 Cases are closed.

40.    Cancellation of Existing Securities.  Except as otherwise provided in the

Plan, the Existing Securities are cancelled and terminated upon the occurrence of the Effective

Date as provided in Section 6.4 of the Plan.  Specifically, as required by Section 12.2(g)(vii) of

the Plan (as modified by this Confirmation Order), all Interests (except Subsidiary Interests and

28

Mrs. Cubbison's Interests, but including the Brands Preferred Stock) are terminated effective upon the Effective Date.

41.    <u>Plan Settlements</u>.  The Plan Settlements and the respective terms thereof as set forth in the Plan, including the Intercreditor Settlement as set forth in the Intercreditor Settlement Order, are hereby approved pursuant to Bankruptcy Rule 9019 as fair, equitable, prudent, and reasonable compromises of the controversies and Claims resolved by the Plan Settlements, are binding upon all Persons affected thereby, and shall be effectuated in accordance with the terms thereof.

42.    <u>Prepetition Lender Actions</u>.  Upon the Effective Date, the Prepetition Lender Actions and any pending adversary proceedings filed in connection therewith are hereby dismissed, with prejudice, and the Prepetition Lender Actions, including any claims or Causes of Action preserved pursuant to that certain Agreed Order Extending the Challenge Deadline, ordered by the Bankruptcy Court on April 24, 2007 (Docket No. 8848) are fully and forever released.

43.    <u>Central States Settlement.</u>  Notwithstanding anything to the contrary contained in the Plan and assuming that no complete withdrawal as contemplated pursuant to 29 U.S.C. §§ 1383 and 1385 occurs prior to or in connection with the Plan (all as previously agreed to in the Settlement Agreement dated November 14, 2006 (as approved by the Court on November 13, 2006)), any claim against or liability of (including any liability or claim for withdrawal liability under 29 U.S.C. §§ 1383 and 1385) any of the Debtors or any third-party to the Central States Fund, a multi-employer plan as that term is defined by 29 U.S.C. § 1301(a)(3)

29

(the "Central States Plan"), specifically including Claim Nos. 9205, 9206, 9207, 9208, 9209,

9214, 9215, 9216 and 9217, is left unimpaired under the Plan, shall not be discharged and shall

continue unaltered as if the Chapter 11 Cases had not been commenced, nor shall any third-party

be released from any liability or claim that the Central States Plan may have against that third-

party as a result of any one of the Debtor's participation in the Central States Plan.

44.    Reconstitution Order.  Decretal paragraphs 8, 9, 12, and 14 of the

Reconstitution Order are incorporated into the Plan to the extent provided in the Reconstitution

Order.  To the extent of any inconsistency between those paragraphs of the Reconstitution Order

and this Confirmation Order or the Plan, the terms and provisions of those paragraphs of the

Reconstitution Order shall be controlling, but only to the extent provided in the Reconstitution

Order.

45.    Payment Of Fees.  All fees payable pursuant to section 1930 of title 28 of

the United States Code, as of the entry of this Confirmation Order as determined by the Court at

the Confirmation Hearing, shall be paid on the Effective Date.  The Reorganized Debtors will

continue to pay fees pursuant to section 1930 of title 28 of the United States Code, as required by

that section, in the event not paid by the Trustee in accordance with the terms of the Trust

Agreement, without prejudice to the Reorganized Debtors' rights against the Creditors' Trust

under Section 11.21 of the Creditors' Trust Agreement.

46.    Authorization To Consummate Plan.  Notwithstanding Bankruptcy Rule

3020(e), but subject to Sections 12.2 and 12.3 of the Plan, the Court authorizes the Debtors to

consummate the Plan at any time after entry of this Confirmation Order.  The Debtors are

authorized to execute, acknowledge, and deliver such deeds, assignments, conveyances, and

other assurances, documents, instruments of transfer, Uniform Commercial Code financing

statements, trust agreements, mortgages, indentures, security agreements, and bills of sale and to

take such other actions as may be reasonably necessary to perform the terms and provisions of

the Plan, all transactions contemplated by the Plan, and all other agreements related thereto.

47. <u>Failure To Consummate Plan And Substantial Consummation</u>. If the

Effective Date does not occur, then the Plan, any settlement or compromise embodied in the Plan

(including the fixing or limiting to an amount certain any Claim or Class of Claims and the

Intercreditor Settlement), the assumption or rejection of executory contracts or unexpired leases

effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be null

and void. In such event, nothing contained in the Plan or this Confirmation Order, and no acts

taken in preparation for consummation of the Plan, shall, or shall be deemed to, (a) constitute a

waiver or release of any Claims by or against or Interests in the Debtors or any other Person, (b)

prejudice in any manner the rights of the Debtors or any Person in any further proceedings

involving the Debtors, (c) constitute an admission of any sort by the Debtors or any other Person,

or (d) be construed as a finding of fact or conclusion of law with respect thereto. Upon the

occurrence of the Effective Date with respect to each Debtor, the Plan shall be deemed

substantially consummated as to such Debtor.

48. <u>Retention Of Jurisdiction</u>. Pursuant to sections 105(a) and 1142 of the

Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of

the Effective Date, the Court shall retain exclusive jurisdiction as provided and to the extent

31

provided in the Plan to the fullest extent permitted by law, including, among other items and matters, jurisdiction over those items and matters set forth in Article XIII of the Plan; provided, however, that the jurisdiction provisions set forth in each of the Exit Facility Documents shall govern all matters related to the respective Exit Facility Documents and the commitment letters related thereto and this Court shall not retain jurisdiction with respect to any issues or disputes arising under any of the Exit Facility Documents or the respective commitment letters related thereto in a manner that is inconsistent with the provisions of the respective Exit Facility Documents. For the avoidance of doubt, the Court shall retain exclusive jurisdiction to resolve motions seeking relief under section 1113 of the Bankruptcy Code following confirmation of the Plan.

49.     Creditors' Committee Termination.  Effective on the Effective Date, the Creditors' Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code, except with respect to applications for Professional Claims. The professionals retained by the Creditors' Committee and the members thereof shall not be entitled to compensation and reimbursement of expenses for services rendered after the Effective Date, except for services rendered in connection with (a) the implementation of the transactions contemplated to occur on the Effective Date under the Plan and (b) applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date pursuant to Section 9.2 of the Plan.

50.     <u>SERP</u>.  Immediately prior to the Effective Date, the SERP shall be deemed

terminated, and the Debtors' and Reorganized Debtors' obligations thereunder shall cease, and on

the Effective Date Marshall and Ilsley Bank, the trustee of the rabbi trust holding certain assets

of the SERP, shall remit such assets to the Reorganized Debtors to be used for general corporate

purposes.

51.     <u>Return of Retainer</u>.  On the Effective Date, and upon payment of all costs

and expenses of the Prepetition Agent by the Debtors, the Prepetition Agent shall cause to be

returned to the Reorganized Debtors any surplus from the retainer paid by the Debtors to the

Prepetition Agent pursuant to Section 8(b) of the Sixth Amendment to the Prepetition Credit

Agreement, dated as of September 7, 2004.

52.     <u>Flowers Brands Litigation</u>.  Notwithstanding anything to the contrary

contained in this Confirmation Order or the Plan, including, without limitation, Sections 9.4,

11.2, 11.7 and 11.9 of the Plan, (a) the debt, if any, owed by any of the Debtors to, and the

Claims (including, without limitation, claims for injunctive relief), if any, of Flowers Bakeries

Brands, Inc. ("<u>Flowers Brands</u>"), arising postpetition and which have been asserted as of the date

of this Confirmation Order, or are hereafter asserted by amendment permitted by the presiding

court, in that certain action styled *Flowers Bakeries Brands, Inc. v. Interstate Bakeries*

*Corporation* (Case No. 1:08-cv-02376-TWT) currently pending in the United States District

Court for the Northern District of Georgia, Atlanta Division (the "<u>Flowers Brands Litigation</u>

<u>Claims</u>"), shall not be discharged, enjoined or otherwise affected by this Confirmation Order or

the Plan, nor shall this Confirmation Order or the Plan exculpate any of the Debtors therefrom;

33

(b) Flowers Brands shall not be required to file a request for payment of an administrative expense on account of the Flowers Brands Litigation Claims, nor shall Flowers Brands share in any distribution from the Estates or the Creditors' Trust on account of the Flowers Brands Litigation Claims, and (c) Flowers Brands shall be free to pursue the Flowers Brands Litigation Claims, to the extent liquidated through judgment, settlement or otherwise, against the applicable Reorganized Debtors.

53.    <u>References To Plan Provisions</u>.  The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

54.    <u>Exhibits</u>.  Each reference to a document or agreement that is in the form attached as an Exhibit to the Plan in this Order, in the Findings and Conclusions or in the Plan shall be deemed to be a reference to such document or agreement in substantially the form of the latest version of such document or agreement filed with the Court (whether filed as an attachment to the Plan or filed separately).

55.    <u>Inconsistencies</u>.  In the event of an inconsistency between the Plan (not including Exhibits to the Plan) and the Exhibits to the Plan (as may be modified), the Exhibits to the Plan shall control.  The provisions of the Plan  and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; <u>provided</u>, <u>however</u>, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of

such inconsistency, the provisions of this Confirmation Order shall govern and any such

provision of this Confirmation Order shall be deemed a modification of the Plan and shall

control and take precedence.

56.    Separate Confirmation Orders.  This Confirmation Order is and shall be

deemed a separate Confirmation Order with respect to each of the Debtors in each Debtors'

separate Chapter 11 Cases for all purposes.  The Clerk of the Court is directed to file and docket

this Confirmation Order in the Chapter 11 Case of each of the Debtors, notwithstanding any

order authorizing administrative consolidation of the Chapter 11 Cases.

57.    Filing And Recording.  This Confirmation Order (a) is and shall be

effective as a determination that, on the Effective Date, (i) all Claims and Interests existing prior

to such date have been released, discharged, and terminated to the extent provided herein or in

the Plan and (ii) all Liens granted hereunder are valid, perfected and in full force and effect, and

(b) is and shall be binding upon and shall govern the acts of all entities including all filing

agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds,

registrars of deeds, administrative agencies, clerks of court, governmental departments,

secretaries of state, federal, state and local officials, and all other persons and entities who may

be required, by operation of law, the duties of their office, or contract, to accept, file, register or

otherwise record, or release any document or instruments.  Each and every federal, state, and

local government agency is hereby directed to accept any and all documents and instruments

necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to

effectuate, implement, and consummate the transactions contemplated by the Plan and this

35

Confirmation Order without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by state or local law.

58.    <u>Notice Of Confirmation Order and Occurrence Of Effective Date</u>.  On or before the tenth (10th) day following the occurrence of the Effective Date, the Debtors shall serve notice of entry of this Confirmation Order and occurrence of the Effective Date pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), on all Claimholders, the United States Trustee and other parties-in-interest, by causing a notice of this Confirmation Order and the occurrence of the Effective Date in substantially the form of the notice annexed hereto as <u>Exhibit B</u> (the "<u>Notice of Effective Date</u>"), which form is hereby approved, to be delivered to such parties by first class mail, postage prepaid.  The Debtors are hereby authorized and directed to provide Notice of Effective Date to holders of public debt and equity securities in the manner set forth in the Solicitation Procedures Order; <u>provided</u>, <u>however</u>, that notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Person to whom the Debtors mailed a notice of the Bar Date or Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved - left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person of that Person's new address.  The notice described herein is adequate and appropriate under the particular circumstances of the Chapter 11 Cases, and no other or further notice is necessary.

59.    <u>Priority Tax Claims</u>.  Except as otherwise provided herein or in the Plan, any Allowed Priority Tax Claims not paid on the Effective Date shall bear interest at the rate

specified in Section 2.2 of the Plan, which is hereby approved, until paid, beginning on the

Effective Date and continuing until paid.  All Allowed Priority Tax Claims will be paid over a

period not exceeding six (6) years after the assessment of the tax on which such Claim is based,

as required by section 1129(a)(9)(C) of the Bankruptcy Code.

      60.    <u>Certain Priority Tax Claims</u>.  The Debtors shall pay in full, pursuant to

Section 2.2(c) of the Plan, on the Effective Date, the following: to the Missouri Department of

Revenue, claim #8721 in the amount of $21,721.78 and claim # 9030 in the amount of

$87,913.15; and to the Massachusetts Department of Revenue, claim #8713 in the amount of

$425,017.54.  For the purpose of this paragraph, "Taxing Authorities" collectively refers to those

Taxing Authorities listed in the prior sentence and "Taxing Authorities Proofs of Claim"

collectively refers to those proofs of claim asserted by the Taxing Authorities as described in the

prior sentence.  By acceptance of the payments described in the first sentence of this paragraph,

the Taxing Authorities, on their behalf and on behalf of any of their respective successors and

assigns, release the Debtors and their current, former and future subsidiaries, affiliates,

representatives, successors, officers, directors, employees and agents  from any and all claims,

debts, liabilities, damages or other obligations relating to the matters that were asserted, could

have been asserted or that related to subject of the Taxing Authorities Proofs of Claims.

      61.    <u>Investment Agreement, Exit Facility Documents, Warrants</u>.

Notwithstanding any provision in this Confirmation Order, the Investment Agreement and, upon

execution, the Exit Facility Documents and the Warrants are valid, binding, in full force and

effect in accordance with their respective terms, and constitute obligations of the parties thereto fully enforceable on their terms, and are not amended or modified in any way hereby.

62.    Terms Binding on Prepetition Lenders.  Upon the Effective Date, each holder of a Prepetition Lender Claim receiving Prepetition Lenders Plan Distribution Property shall be deemed to be a lender party to the New Third Lien Term Loan, a holder of the New Convertible Secured Notes and a holder of the Series E Warrants, in each case, subject to the terms and conditions set forth therein without the need for execution thereof by the holder of a Prepetition Lender Claim.

63.    Resolution of Barry Callebaut USA, LLC.  Nothing in the Plan or the Confirmation Order, including but not limited to any proposed substantive consolidation of the Debtors (or certain of them), retention of Avoidance Claims or other Retained Actions against Barry Callebaut USA, LLC, or any of its related or affiliated companies by the  Reorganized Debtors, or assignment of such claims to a successor-in-interest, shall constitute a waiver of any rights or defenses that Barry Callebaut USA, LLC, or any of its related or affiliated companies may assert by way of defense, offset or affirmative defense in any Avoidance Claims or other Retained Actions by the Debtors, Reorganized Debtors or their successors against Barry Callebaut USA, LLC, or any of its related or affiliated companies.

64.    Resolution of Automotive Rentals, Inc. Objections.  If the lease and related documents (collectively, the "Lease") entered by and between the Debtor and Automotive Rentals, Inc. ("ARI") are assumed by the Debtor, then, notwithstanding anything to contrary (a) in this Order, the Plan, or any cure notice, (b) in any other pleading, stipulation or order filed in

38

this case or any adversary proceeding or lawsuit, or (c) in any agreement, including, without

limitation, any tolling agreement, regardless of the date on which any of the aforementioned

were presented, executed, signed, confected, filed or entered, all of ARI's rights, claims (that

arise after the assumption) and defenses under or related to the Lease shall be, and are hereby,

reserved and preserved; provided, however, and without limiting the foregoing reservation of

ARI's rights, claims and defenses, with respect to any Avoidance Claims (as defined in the Plan)

that arose on or before the Petition Date, all of ARI's rights, claims and defenses (including, but

not limited to, claims for cure, recoupment and/or setoff [regardless of any limitations in Section

553 of the Bankruptcy Code]) are reserved and preserved such that ARI may (i) recoup, offset

and/or avoid any liability or damages, and/or (ii) recover affirmative claims, but only in an

amount that will not exceed the total amount (including, without limitation, any interest, fees and

costs) of any claim asserted against and/or recovered from ARI. If the Lease is not assumed by

the Debtor and/or is rejected by the Debtor, then all of ARI's rights, claims and defenses,

including those under the Bankruptcy Code, shall be, and are hereby, reserved and preserved.

         65.    <u>Resolution of the Internal Revenue Service Objection.</u>

         (a)    <u>Administrative Claims</u>.    The United States Internal Revenue Service

(the "IRS") shall be entitled to file any administrative claim for a tax owing by the Estates to the

United States, and include in such claim any applicable interest and/or penalty, within 120 days

after the Effective Date or within 120 days after the filing of the return reflecting the tax on

which that claim is based.  The Debtors or Reorganized Debtors shall mail a copy of any return

filed with the IRS after the Confirmation Date to Mary Brellinger, IRS Insolvency, P.O. Box

66778, Stop 5334 STL, St. Louis, Missouri 63166, and Dennis Onnen, IRS Associate Area

Counsel, 2345 Grand, Suite 301, Kansas City, Missouri 64108.  If any such administrative claim

by the IRS is based on the understatement of tax on a return or the failure to file a return, the IRS

shall be entitled to file such claim within a reasonable time after the additional tax is discovered.

Unless the Debtors, Reorganized Debtors, or other appropriate party in interest objects to any

administrative claim filed by the IRS hereunder within 180 days of the filing of such claim, such

claim shall be deemed allowed.  In the event an objection is timely filed, the Bankruptcy Court

hereby retains jurisdiction to determine the allowance and amount of such claim, including any

applicable interest and/or penalties.

> (b)  <u>Discharge and Releases</u>.  Sections 11.5 and 11.7 of the Plan shall

not be construed to relieve non-Debtors from any possible tax liabilities to the IRS.

> (c)  <u>Creditors Trust</u>.  The Creditors' Trust Agreement is hereby

amended to provide that any valuations of the property held by the trust made by the Trustee, on

the one hand, and by any Trust Beneficiaries, on the other, will be consistent with each other and

those valuations shall be used for all federal income tax purposes.

> 66.  <u>Modifications to Amended Exhibit A-1 to the Plan</u>.  Amended Plan

<u>Exhibit A-1</u> (Non-Exclusive List of Retained Actions and Avoidance Actions) is hereby

modified to remove:

| SUN-MAID | 331,068.18 |
|---|---|

67.  <u>Modifications to Amended Exhibit O to the Plan</u>.  Amended Plan <u>Exhibit O</u> (Schedule of Assumed Unexpired Leases and Non-Union Executory Contracts) is hereby modified as follows:

(a)  The following executory contracts or unexpired leases are deleted from Amended <u>Exhibit O</u>:

| KEY | REID | LEASE COMMENCEMENT DATE | LOCATION ADDRESS | CURRENT LANDLORD ENTITY | LANDLORD ADDRESS |
|---|---|---|---|---|---|
| 184. | 0089 | 02/01/96 | 116 N BOLINGBROOK BOLINGBROOK, IL | BRIAR SQUARE, LLC | 2801 CENTRE CIRCLE DRIVE DOWNERS GROVE, IL  60515 |
| 244. | 1089 | 04/01/02 | 52565 US 33 NORTHSOUTH BEND, IN | NEW WINGS OF FAITH CHURCH, INC. | ATTN: DARRIN CHAPMAN P. O. BOX 8165 SOUTH BEND, IN  46660 |
| 410. | 0313 | 11/01/83 | 2448 FREEDOM DRIVE CHARLOTTE, NC | MARSH MORTGAGE | PO BOX 35329 CHARLOTTE, NC 28235 |

| START DATE | COUNTERPARTY | CONTRACT NAME | NOTICE PARTY | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|---|---|
| 7/30/1996 | GE Fleet Services | Truck Lease | | 2988 Campus Drive | San Mateo | CA | 94403 |
| 4/10/78 (Exhibit O incorrectly states 8/19/1985) | Roman Meal Company | License Agreement and Advertising Continuity Plan - Grand Junction | | PO Box 11126 | Tacoma | WA | 98411 |
| 12/18/2002 | Roman Meal Company | License Agreement and Advertising Continuity Plan - Henderson | Roman Meal Company | PO Box 11126 | Tacoma | WA | 98411 |
| 1/1/1974 | Roman Meal Company | License Agreement and Advertising Continuity Plan - Minot | Roman Meal Company | PO Box 11126 | Tacoma | WA | 98411 |

(b)  The following executory contracts or unexpired leases are added to Amended <u>Exhibit O</u>:

41

| START DATE | COUNTERPARTY | CONTRACT NAME | NOTICE PARTY | ADDRESS | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|---|---|
| 09/11/2002 | EnergyUSA – TPC Corp. | Base Contract for Short-Term Sale and Purchase of Natural Gas and all other documents that relate to the Base Contract, whether executed at the time of the Base Contract or thereafter | Thorp Reed & Armstrong, LLP | One Oxford Centre 301 Grant Street, 14th Floor | Pittsburgh | PA | 15219 |
| 02/25/2004 | Accenture LLP | Master Outsourcing Agreement and related Appendices, Amendments and Variations | Accenture LLP | 1010 Market St., Suite 900 | St. Louis | MO | 63101 |
| 04/28/2005 | Accenture LLP | Restructuring Agreement | Accenture LLP | 1010 Market St., Suite 900 | St. Louis | MO | 63101 |
| 03/26/1996 | Oracle Corporation | Software License & Service Agreement | Oracle Corporation | 1610 10 Desperes Road, Suite 120 | St. Louis | MO | 63131 |
| 02/12/2003 | Oracle Corporation | Oracle License & Services Agreement | Oracle Corporation | 1610 10 Desperes Road, Suite 120 | St. Louis | MO | 63131 |
| 7/30/1996 | GE Fleet Services | Leases regarding fleet nos. 107216, 107217, 107218, 100751, and 101267 | | 2988 Campus Drive | San Mateo | CA | 94403 |
| 3/1/2000 | State of Ohio, Tax Credit Authority" | Tax Credit Agreement | Executive Director Tax Credit Authority | 77 South High Street, 28th Floor | Columbus, OH | OH | 43215-6108 |

68.    Modifications To The Plan.  At the request of the Debtors, the Plan is

hereby modified pursuant to section 1127(a) of the Bankruptcy Code as set forth below:

(a)    Section 1.140 of the Plan is modified as follows:

**"Prepetition LC"** has the meaning ascribed to it in Section 4.~~7~~**1** hereof.

(b)    Section 1.158 of the Plan is modified as follows:

**"Restructuring Transactions"** means ~~a dissolution or winding up of the corporate existence of a Debtor or the consolidation, merger, contribution of assets, or other transaction in which a Reorganized Debtor merges with or transfers substantially all of its assets and liabilities to a Reorganized Debtor or their Affiliates, on or after the Effective Date, as set forth in the Restructuring Transactions Notice.__ **the transactions set forth in Section 6.13 of this Plan and as further described in the Restructuring Transactions Notice which is attached as Exhibit I to this Plan.**

42

(c)     Section 1.196 of the Plan is modified as follows:

**"Trustee Professionals"** has the meaning ascribed to it in subsection 10.3~~(d)~~**(e)** hereof.

(d)     Section 6.6(b) of the Plan is modified as follows:

On the Effective Date, the term of the current members of the board of directors of ~~the corporate Debtors~~ **IBC** shall expire.  The initial board of directors of ~~the corporate~~ Reorganized ~~Debtors~~ **IBC** will consist of eight (8) directors. Craig Jung (or in the event of his death, incapacity, or resignation, the chief executive officer of IBC) shall serve as a director.  Equity Investors shall designate five (5) directors.  The Prepetition Investors shall designate two (2) directors reasonably satisfactory to Equity Investors.  **The existing directors of each Subsidiary Debtor shall remain in their current capacities as directors of the applicable Reorganized Subsidiary Debtor, subject to the ordinary rights and powers of the board of directors or equityholders to replace them.**

The Persons designating board members shall file with the Bankruptcy Court and give to the Debtors written notice of the identities of such members on a date that is not less than ten (10) days prior to the Voting Deadline.

(e)     Section 6.7 of the Plan is modified as follows:

### 6.7.     Employment, Retirement, Indemnification and Other Agreements and Incentive Compensation Programs.

(a)     The proposed terms of employment of certain key employees of the Reorganized Debtors, to be effective on the Effective Date, are summarized at <u>Exhibit N</u> attached hereto (the "<u>Executive Employment Agreements</u>").   The Executive Employment Agreements are to be in form and substance satisfactory to Equity Investors and the assumption of, or entry into, the Executive Employment Agreements as provided for herein shall be subject to the consent of Equity Investors prior to the Confirmation Date.  For the avoidance of doubt, with the exception of the requirement that the Debtors assume the Executive Employment Agreement with Craig Jung, entry into or assumption of any Executive Employment Agreement or other employment agreement shall not be a condition precedent to the confirmation or consummation of this Plan.

(b)     With the exception of those individuals (i) whose employment terms are summarized on <u>Exhibit N</u>, and (ii) the terms of whose employment agreements are subject to a rejection motion as of the Confirmation Hearing, to the extent that any of the Debtors has in place as of the Effective Date employment, severance (change in control), retirement, indemnification and other agreements with their respective active

43

directors, officers, managing members and employees who will continue in such capacities or a similar capacity after the Effective Date, or retirement income plans, welfare benefit plans and other plans for such Persons, such agreements, programs and plans will remain in place after the Effective Date, and the Reorganized Debtors will continue to honor such agreements, programs and plans except to the extent provided herein without prejudice to the Reorganized Debtors' authority to modify or eliminate any such agreements, programs or plans as permitted under applicable non-bankruptcy law. Benefits provided under such agreements or plans may include benefits under qualified and non-qualified retirement plans; health and dental coverage; short and long-term disability benefits; death and supplemental accidental death benefits; vacation; leased car; financial consulting, tax preparation and estate planning as well as an annual physical examination, each paid or provided commensurate with an employee's position in accordance with the applicable Reorganized Debtor's policies then in effect.  Such agreements and plans also may include equity, bonus and other incentive plans in which officers, managing members and other employees of the Reorganized Debtors may be eligible to participate; <u>provided</u>, <u>however</u>, such equity, bonus and other incentive plans shall not provide for the issuance of New Common Stock and to the extent that such equity, bonus and other incentive plan provides for the issuance of Existing Securities, such provision shall be deemed null and void and the officers, managing members and other employees shall waive any right to enforce such provisions; <u>provided</u>, <u>further</u>, <u>however</u>, that pursuant to the Long Term Incentive Plan, there shall be reserved for certain members of management, directors, and other employees of the Reorganized Debtors a certain number of shares of New Common Stock and other securities all as more fully described in Section 6.8 below.  **<u>Notwithstanding anything to the contrary herein, following the Effective Date of the Plan, with respect to the payment of "retiree benefits" (as such term is defined in section 1114 of the Bankruptcy Code) related to medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death, such payment shall continue at the levels established pursuant to subsections (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to confirmation this Plan, for the duration of the periods the Debtors have obligated themselves to provide such benefits, if any.</u>**

(c)     Notwithstanding anything contained herein to the contrary, the terms of the KERP shall not be modified, altered, or amended.  Retention Bonuses (as defined in the KERP) shall be paid in the amounts and at such times as contemplated by the KERP.

(f)     Section 6.11 of the Plan is modified as follows:

**6.11.   Issuance of the New Convertible Secured Notes, the New Common Stock and Warrants and Entry Into the New Third Lien Term Loan**.  On the Effective Date, Reorganized IBC shall issue the New Convertible Secured Notes, the New Common Stock and the Warrants for distribution, and shall enter into the New Third

Lien Term Loan, in accordance with the terms of the Transaction.  In the Confirmation Order, the Bankruptcy Court shall approve the New Third Lien Term Loan and the New Convertible Secured Notes in substantially the form disclosed to the Bankruptcy Court and authorize the Reorganized Debtors to enter into the New Third Lien Term Loan and issue the New Convertible Secured Notes pursuant to the New Third Lien Term Loan Credit Facility and the New Convertible Secured Note Indenture, respectively, and execute the same together with such other documents as the agent under the New Third Lien Term Loan and the trustee under the New Convertible Secured Note Indenture may reasonably require.

The issuance to the Prepetition Lenders of the New Convertible Secured Notes **and the Series E Warrants** (including the New Common Stock into which such New Convertible Secured Notes are convertible **and the New Common Stock into which the Series E Warrants are exercisable**) and the distribution thereof shall be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code.  The definitive documents with respect to the New Convertible Secured Notes distributed pursuant to this Plan will have mandatory conversion rights, anti-dilution rights and transfer restrictions reflecting the terms set forth on Exhibit G hereto and shall be mutually acceptable to the Debtors, Equity Investors and the Prepetition Investors.

(g)    Section 6.12 of the Plan is modified as follows:

**6.12.  Post-Effective Date Financing**    On the Effective Date, the Reorganized Debtors (other than Mrs. Cubbison's) shall (a) enter into the New Credit Facilities and the New Third Lien Term Loan Credit Facility together with all guarantees evidencing obligations of the Reorganized Debtors thereunder and security documents, (b) execute mortgages, certificates and other claims documentation and deliveries as the Prepetition Investors reasonably request, (c) deliver insurance and customary opinions, and (d) enter into other documentation as described in the Term Loan Facility Commitment Papers and Exhibit H to the Commitment Letter, all of which items in clauses (a) – (d) shall be in form and substance reasonably satisfactory to the Prepetition Investors, and such documents and all other documents, instruments and agreements to be entered into, delivered or contemplated thereunder shall become effective in accordance with their terms on the Effective Date.  In the Confirmation Order, the Bankruptcy Court shall approve the New Credit Facilities and the New Third Lien Term Loan Credit Facility in substantially the form disclosed to the Bankruptcy Court and authorize the Reorganized Debtors to execute the same together with such other documents as the lenders under the New Credit Facilities and the New Third Lien Term Loan Credit Facility may reasonably require in order to effectuate the treatment afforded to such parties under the New Credit Facilities and the New Third Lien Term Loan Credit Facility, respectively.

Upon the Effective Date (i) the Debtors and the Reorganized Debtors are authorized to execute and deliver the New Credit Facility Documents, the New Third Lien Term Loan Credit Facility, the New Convertible Secured Note Indenture, all mortgages, intercreditor agreements, security documents and all other related agreements, documents or instruments to be executed or delivered in connection therewith, **including (x) documentation regarding letters of credit replacing or "backing-up" the Prepetition LCs and the letters of credit outstanding as of the Effective Date under the DIP Facility, and (y) documentation of the cancellation or cash collateralization of such letters of credit** (collectively, the "Exit Facility Documents") and perform their obligations thereunder including, without limitation, the payment or reimbursement of any fees, expenses, losses, damages or indemnities, (ii) the Exit Facility Documents shall constitute the legal, valid and binding obligations of the Reorganized Debtors parties thereto, enforceable in accordance with their respective terms, (iii) the Liens granted to secure the obligations under each applicable Exit Facility Document shall be, and shall remain (until released in accordance with the terms of the applicable Exit Facility Document), legal, valid, perfected, non-voidable, non-avoidable and binding liens on, and security interests in, all property and assets of the Reorganized Debtors (to the extent required by the Exit Facility Documents) having the priority granted to them under the Plan, and (iv) no obligation, payment, transfer or grant of security under the Exit Facility Documents shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable law or subject to any defense, reduction, recoupment, setoff or counterclaim on account of any act, event or occurrence arising on or prior to the Effective Date. The Debtors and the Reorganized Debtors, as applicable, and the other persons granting any liens and security interests to secure the obligations under the Exit Facility Documents are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary or desirable to establish and further evidence perfection of such liens and security interests under the provisions of any applicable federal, state, provincial or other law (whether domestic or foreign) (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals and consents shall not be required for such perfection), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

(h)     Section 9.5 of the Plan is modified as follows:

**9.5.    The ACE Insurance Program**. Notwithstanding anything to the contrary in this Plan, the Disclosure Statement or the Confirmation Order: (a) on the Effective Date, the Debtors and the Reorganized Debtors shall assume the ACE Insurance Program in its entirety and shall pay the cure costs related to such assumption; (b) the ACE Insurance Program (including, but not limited to, all letters of credit and other collateral and security provided to the ACE Companies (or any of them) pursuant the ACE Insurance Program) shall survive and shall not be amended, modified, waived or

46

impaired in any respect by this Plan, the Confirmation Order or otherwise without the prior written agreement of the ACE Companies; (c) the claims of the ACE Companies arising under the ACE Insurance Program shall be Allowed Administrative Claims, which are payable in the ordinary course of business, and shall not be discharged or released by this Plan or the Confirmation Order; (d) the ACE Companies shall not be required to file or serve a request for payment of any Administrative Claim and shall not be subject to any bar date governing Administrative Claims; (e) nothing in this Plan or the Confirmation Order shall be construed as, or is, a determination as to coverage under the ACE Insurance Program; and (f) nothing in this Plan or the Disclosure Statement in any way: (i) precludes or limits the rights of the insurers to contest and/or litigate with any party, including, without limitation, the Debtors **and the Reorganized Debtors**, the existence, primacy and/or scope of available coverage under any alleged applicable policy; (ii) permits any holder of a Workers' Compensation Claim or an Insured Claim to recover the same amounts from the ACE Companies and the Debtors **(or as the case may be, the Reorganized Debtors)**; (iii) alters the ACE Companies' rights and obligations under the ACE Insurance Program or modifies the coverage provided thereunder; or (iv) alters the Debtors' **(or as the case may be, the Reorganized Debtors')** rights and obligations under the ACE Insurance Program, including, without limitation, any duty of the Debtors' **(or as the case may be, the Reorganized Debtors')** to defend, at their own expense, against claims asserted under the Policies; provided, however, that, after the Effective Date, the ACE Companies shall use their commercially reasonable efforts, consistent with the ACE Insurance Program, to reduce the aggregate letters of credit and other collateral and security provided to the ACE Companies (or any of them) pursuant to the ACE Insurance Program by the Reorganized Debtors.

(i)      Section 11.2 of the Plan is modified as follows:   **11.2   Discharge of the Debtors**.  Pursuant to and to the fullest extent permitted by section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, ~~C~~confirmation of this Plan ~~shall satisfy,~~ discharge~~s~~**s,** and release~~s,~~**s,** effective as of the Confirmation Date (but subject to the occurrence of the Effective Date), the Debtors, the Reorganized Debtors and the Estates ~~of~~ **(x) from all** Claims and Causes of Action, whether known or unknown, ~~against,~~ **and (y) from** liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, **in each case** regardless of whether any property ~~shall have~~**has** been distributed or retained pursuant to this Plan on account of such Claims, **Causes of Action,** rights, **liabilities, liens, obligations** and Interests, **and in each case** including~~,~~ ~~but not limited to, demands and liabilities~~ **(x) Claims, Causes of Actions, rights, liabilities, liens, obligations and Interests** that arose before the Confirmation Date, **(y)** any ~~liability~~**Claims, Causes of Actions, rights, liabilities** (including withdrawal liabilit~~y~~**ies**)**, liens, obligations and Interests** to the extent such Claims**, Causes of Actions, rights, liabilities (including withdrawal liabilities), liens, obligations and Interests** relate to services performed by employees of the Debtors prior to the Petition Date and that arise from a termination of employment or a termination of any employee

or retiree benefit program regardless of whether such termination occurred prior to or after the Confirmation Date, and **(z)** all ~~debts~~**Claims** of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such ~~debt, right,~~**Claims, Causes of Actions, rights, liabilities, liens, obligations and Interests** or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such ~~debt, right,~~**Claims, Causes of Actions, rights, liabilities, liens, obligations and Interests** ~~or Interest~~ is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim, **Cause of Action,** right, **liability, lien, obligation** or Interest**s** accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all liabilities of and Interests in the Debtors, subject to the Effective Date occurring.

As of the ~~Effective~~ **Confirmation** Date, except as provided in this Plan or in the Confirmation Order (including with respect to the indemnification obligations referenced in the **second** ~~last~~ sentence of Section 6.4 herein) or under the terms of the documents evidencing and orders approving the New Credit Facilities, the Investment Agreement, the Commitment Letter, the New Third Lien Term Loan Credit Facility, the New Convertible Secured Note Indenture and the Trust Stock Appreciation Rights, all Persons shall be precluded from asserting against the Debtors or the Reorganized Debtors any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the ~~Effective~~ **Confirmation** Date.  In accordance with the foregoing, except as provided in this Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all Interests in IBC, and in the Brands Preferred Stock, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Interest.

(j)    Section 11.11 of the Plan is modified as follows:

**11.11  Other Pension Plans**.  Notwithstanding anything to the contrary contained in this Plan, to the extent the withdrawal liability under 29 U.S.C. §§ 1383 and 1385 as asserted or assertable by the **Retail, Wholesale and Department Store International Union and Industry Pension Fund,** New York State Teamsters Conference Pension and Retirement Fund, Western Pennsylvania Teamsters and Employers Pension Fund and New England Teamsters and Trucking Industry Pension Fund has not yet been incurred and remains a potential withdrawal liability of the Debtors as of the Effective Date, then such withdrawal liability claim shall continue unaltered as if the Chapter 11 Cases had not been commenced, nor shall any third-party be released from any potential withdrawal liability claim that the **Retail, Wholesale and Department Store International Union and Industry Pension Fund,** New York State

48

Teamsters Conference Pension and Retirement Fund, Western Pennsylvania Teamsters and Employers Pension Fund and New England Teamsters and Trucking Industry Pension Fund may have against a third-party as a result of the Debtors' participation in the **Retail, Wholesale and Department Store International Union and Industry Pension Fund,** New York State Teamsters Conference Pension and Retirement Fund, Western Pennsylvania Teamsters and Employers Pension Fund and New England Teamsters and Trucking Industry Pension Fund.  None of the foregoing shall have a right to receive any distribution on account of a withdrawal liability claim that has not yet been incurred and remains a potential withdrawal liability claim and shall not be permitted to vote on or object to this Plan on account of such withdrawal liability claim.

      (k)     Section 12.2(g)(vii) of the Plan is modified as follows:

      **12.2(g)(vii)**    all Interests (except Subsidiary Interests **and Mrs. Cubbison's Interests**, but including the Brands Preferred Stock) are terminated effective upon the Effective Date;

Dated: Kansas City, Missouri
      December 5, 2008

      /s/ Jerry W. Venters
      UNITED STATES BANKRUPTCY JUDGE
**Attorney for Debtor to Serve**

49